**In re Norman TILBURY, Debtor.**

**Norman TILBURY, Appellant,**

v.

**Max W. WALDEN, Appellee.**

**BAP No. NC–85–1469 VEAs.**
**Bankruptcy No. 483–03244HN.**
**Adv. No. 483–1505AW.**

United States Bankruptcy Appellate Panels
of the Ninth Circuit.

Argued and Submitted Sept. 25, 1986.

Decided May 11, 1987.

. Kenneth N. Rivera, Law Offices of Berke, Rivera & Davidson, Walnut Creek, Cal., for appellant/debtor.

Richard B. Blos, Blos, Lapierre & Bishop, San Jose, Cal., for appellee.

Before VOLINN, ELLIOTT and ASHLAND, Bankruptcy Judges.

## OPINION

VOLINN, Chief Judge:

The Chapter 7 debtor, Norman Tilbury, appeals the granting of summary judgment to Max W. Walden, on a complaint to determine nondischargeability, pursuant to 11 U.S.C. § 523(a)(6), of a $224,501.72 debt. The court took judicial notice of the detailed findings of fact, conclusions of law, and judgments entered on November 27, 1967 and August 28, 1984 by the Superior Court of the State of California for Contra Costa County, and concluded that they constituted such clear and convincing proof of a nondischargeable intentional tort as to warrant summary judgment.

We hold that the state court documents judicially noticed by the bankruptcy court were sufficient to permit the court to form an independent judgment regarding dischargeability. There being no genuine issues of material fact, we affirm.

I.

A.

Norman Tilbury filed a voluntary Chapter 7 petition on August 23, 1983. Max W. Walden, a judgment creditor, filed a timely complaint to determine nondischargeability of debt, followed by a motion for summary judgment. Pursuant thereto, Walden requested the bankruptcy court to take judicial notice of five documents relating to a November 27, 1967 judgment which Walden had obtained against Tilbury in California state court for fraud and conspiracy to interfere with Walden's business operations. Tilbury opposed the summary judgment motion, filing a declaration in opposition which stated, in part: "At no time did I act with any intent, malicious or otherwise, to do harm to Plaintiff MAX W. WALDEN. At no time was I aware that harm would result to Plaintiff by my actions. At no time during my interactions with Plaintiff was any act consciously committed with the specific intent to cause financial injury."

The essential problem presented here is whether trial of this issue is precluded by virtue of the record in the state court proceedings.

B.

The record from state court includes five documents which were presented to the bankruptcy court for judicial notice:

1. *Memorandum of Decision,* filed Oct. 10, 1967, by the California state court.

In summary, it states that Tilbury was the attorney for the plaintiffs, who were business tenants of defendant landlord, International Restaurants, Inc. Plaintiffs sought damages for alleged breach of their leases and for alleged fraud. The state court found that although Walden held title to the property, he was not the plaintiffs' landlord. In certain other actions, which were consolidated with the underlying action, Walden sued Tilbury and others for damages for fraud and conspiracy to interfere with his business operations, including filing the underlying action. The consolidated actions were tried to the state court

for 10 days, from March 1–14, 1967. The court concluded that plaintiffs (Tilbury's clients) were not entitled to any recovery, and further that:

As to the Defendants' claims against Norman Tilbury ... there was evidence that in December, 1964, and January, 1965, shortly before suit was filed, the said Norman Tilbury and May and Howard Wan [plaintiffs] were advising the tenants not to pay their rents and not pay any of their obligations under the lease. There was evidence that Norman Tilbury deliberately tried to frustrate the Defendants' efforts to deal with creditors and with the operations of International Restaurants, Inc. [plaintiffs' landlord].

There was further evidence that Norman Tilbury and the Wan-Quan partnership were carrying out a plan to take over the restaurant and that the filing of the lawsuit and the adverse publicity created thereby was a direct cause of the eventual failure of International Restaurants, Inc.

This court concludes, from all of the evidence and the law applicable thereto, that Norman Tilbury and the Wan-Quan partnership wrongfully, and maliciously, conspired with and induced the other tenants of International Restaurants, Inc. to unlawfully breach their several leases with the malicious and wrongful intent and purpose of 'taking over' as their own property the assets of International Restaurants, Inc. and the lands and buildings of Walden Center No. 2, for the further purpose of damaging Max W. Walden.

2. *Findings of Fact and Conclusions of Law,* filed Nov. 24, 1967, by the California state court.

The relevant findings include the following:

5. Defendants ... and their attorney Norman Tilbury in December, 1964, formed the intent to close down the entire International Restaurant at Walnut Creek, force plaintiff International Restaurant, Inc. into bankruptcy and take over the restaurant complex.

6. To carry out this intent, during the months of January, February and March, 1965, defendants ... and Norman Tilbury conspired together to defraud and acting in concert one with the other and with *willful and malicious and fraudulent intent,* did the following acts in furtherance of their conspiracy, to wit: disrupted International Restaurant, Inc.'s dealings with its creditors, stopped payment of rent and encouraged and demanded other tenants to stop payment of rent, took over control of [certain organizations] and prohibited payment of bills by those organizations to plaintiff International Restaurant, Inc., and to other creditors including Pacific Gas & Electric, prepared and filed a $1,500,000.00 law suit containing false and misleading allegations of fraud and misuse of funds by plaintiffs and encouraged and demanded other tenants to become defendants in said law suit.

(Emphasis added.)

3. *Judgment,* entered Nov. 27, 1967, by the California state court.

Walden was granted judgment against Tilbury (and certain other defendants) for $25,000 general damages, $15,000 punitive damages, and $32.17 in costs. The judgment further provided:

That plaintiff Max W. Walden ... be indemnified by defendants ... and Norman Tilbury for any and all amounts plaintiff Max. W. Walden be required to pay by virtue of his guarantee of the obligations of plaintiff International Restaurant, Inc. up to the sum of $250,000.00.

This judgment was appealed and affirmed by the California State Court of Appeals on or about March 17, 1971.

4. *Memorandum of Decision,* filed Aug. 28, 1984, by the California state court.

The court ruled that Walden's judgment for $25,000 general damages and $15,000 punitive damages was time-barred from collection, but that his judgment for indemnification had been interlocutory until this

decision. It states that Walden had established payment of $125,000 by him in satisfaction of obligations of International, and the court awarded Walden judgment for that amount.

5. *Order Setting Amount of Indemnity Judgment and Indemnity Judgment,* filed Aug. 28, 1984, by the California state court.

Here the court ordered judgment for Walden against Tilbury (and others) in the amount of $125,000, plus prejudgment interest of $99,501.72, for a total judgment of $224,501.72. There is no record of any appeal from this order and judgment.

### C.

The bankruptcy court, as indicated, granted Walden's motion for summary judgment and found the $224,501.72 debt to be nondischargeable in bankruptcy.

During the hearing, the court commented:

> This certainly was not a default judgment. It was vigorously litigated, I observe, and I think the principle applies that when an issue has been litigated, the findings of the Court will be accepted as the facts, and if the facts establish ground for exemption from discharge, we do not need to re-litigate it although it's relatively unusual to find a state court judgment where the facts are found explicitly to satisfy all of the elements of exception to discharge. *I conclude this case is one of those unusual cases where it is spelled out in such detail there's nothing left for us to re-litigate.*

(Emphasis added.)

After acknowledging that it was "somewhat unusual that we have a basis for a summary judgment," the court read into the record the state court's Finding of Fact No. 6 (quoted above) and said: "That is, in my view, the Judge having made those findings, that completely covers the nondischargeability elements and it's clear and convincing proof to me that this claim is to be excepted from discharge."

### II.

### A.

Tilbury contends that Walden did not meet his burden of proving the fraud required to establish nondischargeability under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6)[1] by clear and convincing evidence, because the standard of proof for fraud in California is the lower standard of preponderance of the evidence. He asks this panel to reverse the summary judgment and remand for trial on the merits.

Walden contends that the bankruptcy court did not abuse its discretion by granting summary judgment based on the California state court judgment.

### B.

### 1.

The standard of review on appeal from a summary judgment is whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *See* B.R. 7056; Fed.R. Civ.P. 56(c). Ordinarily, the burden is on the moving party to demonstrate that there are no issues of fact and that disposition of the case hinges on issues of law. *In re Stephens,* 51 B.R. 591, 594 (9th Cir. BAP 1985). However, we are faced here with the threshold question as to whether the crucial factual issue has already been considered and decided by the state court and, consequently, whether such decision precludes the bankruptcy court from again

---

1. The complaint (denominated "adversary proceeding") to determine nondischargeability of debt refers only to "a debt obtained by false pretenses, false representations, and actual fraud," which is language similar to 11 U.S.C. § 523(a)(2)(A). No specific sections of the Bankruptcy Code were cited in the complaint, the order appealed from, or the transcript of the summary judgment hearing. However, Tilbury's brief on appeal expressly assumes that the debt was found to be nondischargeable pursuant to *both* 11 U.S.C. § 523(a)(2)(A) and (a)(6). Therefore, we will treat the complaint as having been amended to conform to the proof presented, and raising a claim pursuant to 11 U.S.C. § 523(a)(6). B.R. 7015; Fed.R.Civ.P. 15(b); B.R. 7056; Fed.R.Civ.P. 56(e).

considering that same issue. If consideration of the factual issue is precluded by virtue of the prior determination, then there remains for decision only an issue of law which is then subject to summary judgment.

2.

■ The elements of nondischargeability that Walden was required to prove were either "false pretenses, a false representation, or actual fraud," 11 U.S.C. § 523(a)(2)(A), or a "willful and malicious injury," 11 U.S.C. § 523(a)(6). As to the latter, proof of a specific intent to injure is not required. "Willful and malicious" has been defined as:

> When a wrongful act ·..., done intentionally, necessarily produces harm and is without just cause or excuse, it is 'willful and malicious' even absent proof of a specific intent to injure.

*In re Cecchini*, 780 F.2d 1440, 1443 (9th Cir.1986).

■ The exceptions to discharge relating to fraud set forth in 11 U.S.C. § 523 must be proven by clear and convincing evidence. *See, e.g., Knoxville Teachers Credit Union v. Parkey*, 790 F.2d 490, 491 (6th Cir.1986); *In re Kimzey*, 761 F.2d 421, 423–24 (7th Cir.1985); *In re Black*, 787 F.2d 503, 505 (10th Cir.1986); *In re Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986); 3 Collier on Bankruptcy ¶ 523.08[5] (15th ed. 1986).

3.

Although Tilbury contends that the standard of proof for fraud is less stringent in California than under Code Section 523, neither the record nor case law supports his argument. The California state court case was a bench trial; the court's findings, conclusions, and judgment do not expressly reflect the standard of proof. Review of California case law has revealed fluctuations in the standard of proof for fraud. At the time of trial, in March 1967, the standard of proof for fraud in California was clear and convincing evidence. *See Aggregates Associated, Inc. v. Packwood*, 58 Cal.2d 580, 25 Cal.Rptr. 545, 375 P.2d 425 (1962) (en banc). The lower courts in California apparently followed this decision for many years. *See, e.g., Hansford v. Lassar*, 53 Cal.App.3d 364, 377, 125 Cal. Rptr. 804, 811–12 (1975). It was not until *Liodas v. Sahadi*, 19 Cal.3d 278, 137 Cal. Rptr. 635, 562 P.2d 316 (1977), that the California Supreme Court made it clear that the standard of proof for fraud in that state is the preponderance of the evidence, as Tilbury asserts. Thus, at the time of the state court trial in 1967, the standard of proof was the stricter one.

The only case cited by Tilbury to support his argument that California applied a lesser standard of burden of proof is *In re Taylor*, 514 F.2d 1370 (9th Cir.1975). *Taylor* is a Ninth Circuit case decided after 1967 and before 1977 and does not specifically address the burden of proof in a fraud case under the Bankruptcy Act and is therefore not on point. Moreover, the *Taylor* case derived its statement of the five elements of fraud from *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540, 543 (W.D. Va.1967), which stated that they must be shown "by a preponderance of the evidence." Thus, *Taylor* does not provide authority so much for the standard of proof as it does for the elements of fraud. In the absence of any other cited authorities to support Tilbury's argument, we will assume that the California state court applied the standard of proof approved by the California Supreme Court's *en banc* decision in *Aggregates Associated, supra*, which was clear and convincing evidence. In any event, assuming *arguendo* this higher standard is a federal one, the standard of proof, when applicable, was substantially similar to that required under the Code. *See In re Davis*, 18 B.R. 301, 305 (Bankr.D. Kan.1982). Thus, appellant's contention that there is a lack of congruence in the standards of proof between state court and bankruptcy dischargeability proceedings is without substance.

C.

In the present case, the bankruptcy court, by relying exclusively on the findings of fact, conclusions of law, and judgment entered by the California state court, in effect, applied the doctrine of collateral

estoppel or issue preclusion as to the factual issues presented to it.. Considering the specific character of the record, particularly the findings, the applicability of this doctrine in bankruptcy dischargeability proceedings is squarely before us.

■ Under 11 U.S.C. § 523, the bankruptcy court has exclusive jurisdiction to determine dischargeability. *In re Daley*, 776 F.2d 834, 839 (9th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). To make this determination, the court must consider all relevant evidence bearing on the nature of the debt. *Id.*

It is clear that a prior state court judgment has no *res judicata* effect on dischargeability which involves issues of bankruptcy law not necessarily determinable in the state court matter. *See Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). However, both the United States Supreme Court and the Ninth Circuit have left open the door as to the application of doctrine of collateral estoppel. In *dictum,* the Supreme Court has stated:

> If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17 [of the Bankruptcy Act[, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.

*Brown v. Felsen*, 442 U.S. at 139 n. 10, 99 S.Ct. at 2213 n. 10, 60 L.Ed.2d at 776 n. 10.

A leading opinion of the Ninth Circuit, decided prior to *Brown v. Felsen,* in a footnote, stated the following concerning collateral estoppel.

> We acknowledge that a grant of exclusive jurisdiction to federal courts does

not automatically preclude the application of the doctrine of collateral estoppel. [citations omitted] However, we believe that *collateral estoppel is inappropriate when* 'a new determination is warranted ... by factors relating to the allocation of jurisdiction between [the two courts].'

*In re Houtman*, 568 F.2d 651, 653 n. 2 (9th Cir.1978) (emphasis added).

The more recent *Daley* opinion, *supra,* however, presented the Ninth Circuit with a specific basis for holding that the doctrine of collateral estoppel should not apply at all to dischargeability determinations, but the Court declined to pursue this approach. It would therefore appear that the references to the inapplicability of collateral estoppel in *Daley* and *Houtman* are of a cautionary or presumptive nature. Application of that aspect of these rulings is demonstrated in *In re Moultrie,*[2] 51 B.R. 368 (Bankr.W.D.Wash.1985), a decision rendered before *Daley.*

■ The *Daley* case concerned a stipulated dismissal with prejudice and a summary judgment. As the Court pointed out, because the fraud claims were not actually litigated, collateral estoppel could not apply. *Daley* at 838. Factually, this case was similar to *Brown v. Felsen, supra,* and dealt with in the same manner. The *Daley* Court reviewed the "special rules that govern the application of collateral estoppel in determining dischargeability in bankruptcy," discussing *Houtman, supra,* in some detail. *See Daley* at 838–39. Despite the Daleys' contention that the bankruptcy court had examined all of the relevant evidence, the Ninth Circuit concluded that the documents before the bankruptcy court "were inadequate to permit it to form an independent judgment regarding discharge-

**2.** *Moultrie* discusses and cites case and text authority dealing with issue and claim preclusion as to collateral estoppel after *Brown v. Felsen. Moultrie* at 371–72. Among those giving full issue preclusion effect to prior state court judgments are: *Matter of Ross,* 602 F.2d 604 (3rd Cir.1979); *Spilman v. Harley,* 656 F.2d 224, 227–28 (6th Cir.1981); *In re Pitner,* 696 F.2d 447 (6th Cir.1982); *Schwartz v. Renville Farmers Co-Op Credit Union,* 44 B.R. 266 (D.C.Minn.1984); *In* re Mueller, 34 B.R. 869 (Bankr.D.Colo.1983). To this latter group may be added *In re Brown,* 66 B.R. 13 (Bankr. Utah 1986). Those denying full collateral estoppel effect are: *Houtman, supra; In re Lilley,* 8 B.R. 561 (Bankr.E.D.Penn.1981); *Carey Lumber Co. v. Bell,* 615 F.2d 370 (5th Cir.1980); *In re Smith,* 42 B.R. 927 (Bankr.D. Mass.1984); *In re Farley,* 15 B.R. 11 (Bankr.D. Ore.1981).

ability. Summary judgment, therefore, was inappropriate." *Daley* at 839. We hold that the documents before the bankruptcy court in the present case *did* permit it to form an independent judgment regarding dischargeability. The factual issues here were tried to the state court over a 10-day period. The state court entered unusually detailed findings of fact, as noted by the bankruptcy court below. These findings cover all of the elements of 11 U.S.C. § 523(a)(6), and the bankruptcy court so found. The bankruptcy court did not automatically apply collateral estoppel, as Congress might have apprehended.

## CONCLUSION

The present case is unusual because of the availability of a detailed state court record. Had that court's findings not reflected its comprehensive consideration and grasp of the facts, this matter might have required litigation in the bankruptcy court, despite the passage of time and the problems of proof attendant to the lapse of nearly 20 years.

It is manifest that the bankruptcy court was able to and did give its independent consideration to the detailed record in reaching its conclusion that the issues relating to 11 U.S.C. § 523(a)(6) were actually and necessarily litigated and fairly decided in state court. The record shows that the debtor had a full trial and appellate review of the issues he now contends should be tried once again.

The Order Granting Summary Judgment is AFFIRMED.