**In re Charles B. BERRY and Valerie R. Berry, d/b/a Berry's Auto Restoration, and d/b/a Classic Chrome, Debtors.**

**Sharon MALLOY, as Personal Representative of the Estate of William T. Malloy, deceased, Plaintiff,**

**v.**

**Charles B. BERRY and Valerie R. Berry, d/b/a Berry's Auto Restoration, and d/b/a Classic Chrome, Defendants.**

**Bankruptcy No. 85–1930.
Adv. No. A86–32604.**

United States Bankruptcy Court, W.D. Washington.

Dec. 11, 1987.

Kathleen B. Ebert, of Bonneville, Viert, Morton and McGoldrick, Tacoma, Wash., for plaintiff.

---

Charles E. Street, III, Olympia, Wash., for defendants.

## MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ROBERT W. SKIDMORE,
Bankruptcy Judge.

This matter came before the undersigned judge for summary judgment on August 26, 1987, on the complaint of the Estate of William T. Malloy (hereinafter "Estate") to determine dischargeability of certain debts arising from the debtors' storage and abandonment of liquid chemical waste. Kathleen B. Ebert appeared on behalf of the Estate. Charles B. Street represented the debtors, Charles B. Berry and his wife, Valerie R. Berry.

This court, having considered oral arguments of counsel, having reviewed the briefs and affidavits submitted, and being fully advised in the matter, now issues this memorandum opinion and order.

### FACTS

The facts in this case are undisputed. In June 1982, Charles B. Berry (hereinafter "Berry") commenced operation of an auto restoration and plating business known as Berry's Auto Restoration, also referred to as Classic Chrome. The business was operated on real property situated in Olympia, Washington. Berry leased the property on a month to month basis from the owner, William T. Malloy (hereinafter "Malloy"). The business' auto restoration and chrome plating process generated a substantial amount of hazardous chemical waste, which was drummed and stored on the premises.

On July 14, 1985, Malloy died. As a result, his estate became the successor landlord. At the time of Malloy's death, Berry was approximately four months delinquent in rental payments.

On July 29, 1985, Berry filed a petition for relief under Chapter 11 of the Bankruptcy Code. Thereafter, the Estate filed a motion for relief from stay, in order to pursue an unlawful detainer action in state court. On December 17, 1985, this court lifted the automatic stay and ordered Berry to surrender the premises to the Estate. Nevertheless, Berry refused to surrender the premises. In April of 1986, the Estate instituted an unlawful detainer proceeding in Thurston County Superior Court. Thereafter, the superior court granted the Estate a Writ of Restitution. On May 19, 1986, Berry vacated the premises, abandoning several thousand gallons of hazardous chemical waste. Berry had full knowledge that the abandoned chemicals were hazardous and presented a potentially dangerous environmental and public health hazard. Berry also was fully aware that the Estate would be forced to bear the expense of cleaning up the abandoned chemicals.

On May 20, 1986, a day after vacating the premises, Berry converted the Chapter 11 to a Chapter 7 proceeding. An inspection of the business' inventory on May 21, 1986, revealed that several of the abandoned chemicals were left in open and unmarked containers. On May 23, 1986, the operations manager for North American Environmental, Inc. (hereinafter "NAE") inspected the premises and found that many of the abandoned chemicals were highly acidic or highly alkaline and were dangerous to the public health and safety. The inspector also found highly flammable chemicals and extremely toxic heavy metal liquids. The inspector further observed other chemicals, that if mixed, would create poisonous gases.

On July 21, 1986, this court entered an order precluding the trustee's abandonment of the chemicals. Nevertheless, neither the trustee nor Berry attempted to develop any cleanup proposal. Consequently, on August 29, 1986, the Estate entered into a contract with NAE to cleanup the abandoned chemicals. The approximate cost of the contract was $35,000.

On October 20, 1986, the Department of Ecology (hereinafter "DOE") discovered a leak from a storage tank abandoned on the premises. An inspector for NAE, accompanying the DOE, found that the tank was rubberlined and wooden, and contained hydrochloric acid. The inspector noted that

the acid had eaten through the lining and saturated the wood. When the tank had reached its saturation point, the acid seeped out and etched its way through the concrete floor and into the soil. The inspector concluded that the spill was caused by an inadequate containment area and improper storage of the chemical. The DOE ordered the Estate to cleanup the spill and imposed a $3,000 civil penalty pursuant to RCW 70.105.080.[1] Further, the DOE noted that several storage containers holding incompatible dangerous chemicals were stored together on a concrete floor without separate containment systems in violation of WAC 173–303–630(9)(c).[2] In addition to the $3,000 civil penalty, the Estate incurred $10,358.40 in expenses to cleanup the spill. Therefore, the total cost to cleanup the abandoned chemical waste was $48,358.40.

On July 9, 1986, the Estate filed a complaint to determine the dischargeability of the cleanup costs[3] pursuant to 11 U.S.C. § 523(a)(6). The Estate filed a motion for summary judgment on May 29, 1987. Berry received notice of the motion on June 9, 1987, 15 days prior to the hearing. Berry's counsel, however, failed to appear at the hearing and did not submit responsive affidavits or briefs. As a result, this court on June 24, 1987, entered summary judgment in favor of the Estate, finding that the cleanup costs were nondischargeable as a matter of law. On July 6, 1987, Berry's counsel filed a motion to set aside the judgment on the grounds of inadvertance and excusable neglect under Fed.R.Civ.P. 60(b)(1). This court vacated the June 24, 1987 summary judgment on August 10, 1987. Thereafter, the motion for summary judgment came on for hearing.

## STANDARD OF REVIEW

A party is entitled to summary judgment only if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c). Bankruptcy Rule 7056 makes Rule 56(c) applicable to summary judgment motions in adversary proceedings. Generally, the burden is on the moving party to demonstrate that there are no issues of fact and that disposition of the case hinges on issues of law. *In re Tilbury*, 74 B.R. 73, 76 (BAP 9th Cir.1987). Moreover, this court must view the evidence and all reasonable inferences therefrom in a light most favorable to the nonmoving party. *In re Zupancic*, 38 B.R. 754, 757 (BAP 9th Cir.1984). In this case, there are no disputed issues of fact. Accordingly, this court must determine whether the Estate is entitled to a judgment as a matter of law.

## ANALYSIS

The primary issue in this case is whether the cleanup costs arising from Berry's storage and abandonment of chemical waste are nondischargeable pursuant to 11 U.S.C. § 523(a)(6). The Estate argues that Berry's abandonment of highly dangerous chemicals in open and leaking vats and his failure to maintain proper containment of the chemicals constituted willful and malicious conduct within the meaning of section 523(a)(6). As a result, the Estate was injured in the amount it had incurred to cleanup the chemicals, including the costs and penalty relating to the spill. Therefore, because the Estate's injury resulted from the willful and malicious conduct of Berry, the Estate contends that the cleanup costs are nondischargeable. Alternatively, the Estate alleges that the cleanup costs are post-conversion claims and thus are nondischargeable under section 727(b).

---

1. RCW 70.105.080 and the regulations promulgated thereunder impose a civil penalty on the party or parties responsible for the discharge, accumulation or improper storage of hazardous waste.

2. WAC 173–303–630(9)(c) provides that:
   A storage container holding a dangerous waste that is incompatible with any waste or other materials stored nearby in other containers, piles, open tanks, or surface impoundments must be separated from the other materials or protected from them by means of a dike, berm, wall, or other device. Containment systems for incompatible wastes shall be separate.

3. Hereinafter "cleanup costs" refers to the total cost to cleanup the abandoned chemicals, including the cost and civil penalty relating to the spill.

Berry, on the other hand, argues that he abandoned the chemical waste because of his financial inability to remove the chemicals and because the Estate evicted him through an unlawful detainer proceeding. Thus, according to Berry, his actions were not willful and malicious as defined in section 523(a)(6). Berry further alleges that the cleanup costs are not post-conversion claims because the Estate acted affirmatively to take possession of the premises. Finally, Berry contends that his actions were not tortious as contemplated by section 523(a)(6), but rather arose from a contractual relationship. The Estate's position is the better view.

Section 523(a)(6) excepts from discharge debts resulting from a "willful and malicious injury to another entity or to the property of another entity." There is a clear split of authority, however, concerning the interpretation of the phrase "willful and malicious". Some courts have concluded that the phrase requires an act with the intent to injure. *See In re Long,* 774 F.2d 875 (8th Cir.1985); *In re Compos,* 768 F.2d 1155 (10th Cir.1985); *In re Finnie,* 10 B.R. 262 (Bankr.D.Mass.1981); *In re Hinkle,* 9 B.R. 283 (Bankr.D.Md.1981); and *Matter of Graham,* 7 B.R. 5 (Bankr.D.Nev.1980).

Other courts have ruled that this language requires an intentional act which results in injury. *See Perkins v. Scharffe,* 817 F.2d 392 (6th Cir.1987); *cert. denied,* — U.S. —, 108 S.Ct. 156, 98 L.Ed.2d 112 (1987); *In re Franklin,* 726 F.2d 606 (10th Cir.1984); *Matter of Quezada,* 718 F.2d 121 (5th Cir.1983) *cert. denied,* 467 U.S. 1217, 104 S.Ct. 2662, 81 L.Ed.2d 368 (1984); *Seven Elves, Inc. v. Eskenazi,* 704 F.2d 241 (5th Cir.1983); *In re DeRosa,* 20 B.R. 307 (Bankr.S.D.N.Y.1982); *In re Fussell,* 15 B.R. 1016 (Bankr.W.D.Va.1981); and *In re McGiboney,* 8 B.R. 987 (Bankr.N.D.Ala. 1981).

Recently, in *In re Cecchini,* 780 F.2d 1440 (9th Cir.1986), the Ninth Circuit Court of Appeals adopted the latter line of authority. The *Cecchini* court interpreted the phrase "willful and malicious" to mean that "[w]hen a wrongful act . . ., done intentionally produces harm and is without just cause or excuse, it is willful and malicious even absent proof of specific intent to injure." *In re Cecchini,* 780 F.2d at 1443. *Accord In re Tilbury,* 74 B.R. 73 (BAP 9th Cir.1987); *In re Mills,* 73 B.R. 638 (BAP 9th Cir.1987); 3 *Collier on Bankruptcy,* ¶ 523.16 at 523–112–13 (15th Ed.Supp.1987). Moreover, all liabilities resulting from willful and malicious conduct are nondischargeable. *In re Cecchini,* 780 F.2d at 1443 (citing *In re Adams,* 761 F.2d 1422, 1428 (9th Cir.1985)).

In applying the *Cecchini* standard to the present case, it is apparent that the mere fact that Berry abandoned the premises does not *ipso facto* render his actions willful and malicious. However, under the specific facts in this case, Berry's abandonment coupled with his grossly inadequate storage of hazardous chemical waste demonstrates conduct that rises to the level of willful and malicious.[4]

The abandoned chemicals, as nearly as can be ascertained, presented risks of fire, explosion, destruction of natural resources and injury or death through personal contact. As stated earlier, Berry had complete knowledge when he abandoned the premises that the chemicals presented such environmental and personal safety risks. Nevertheless, Berry stored the chemicals in direct violation of RCW 70.105 and the accompanying regulations. The record indicates that many of the abandoned chemicals were left in open and unmarked containers. Additionally, several storage containers holding incompatible dangerous chemicals were stored together on a concrete floor without separate containment systems. In fact, the record demonstrates that the spill of chemical waste was caused

---

**4.** Arguably, there may be situations when a bankruptcy court would allow a debtor to abandon hazardous chemical waste, provided that the debtor adequately protected the public health and safety prior to abandonment. *Cf. Midlantic National Bank v. New Jersey Depart-* *ment of Environmental Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) (a bankruptcy court cannot authorize a trustee's abandonment of property in contravention of state law, unless conditions are formulated that will protect the public health and safety).

by an inadequate containment area and improper storage of the chemical.

Further, Berry was fully aware that the Estate would be forced to bear the expenses to cleanup the abandoned chemicals. Berry, however, failed to take even the most rudimentary procedures to cleanup the premises or secure the chemicals, such as sealing tanks and removing flammable items, despite ample opportunity to do so before eviction. Indeed, Berry neglected to notify the Estate, the DOE, or the EPA that he was abandoning dangerous chemical waste on the premises. Consequently, the Estate, in the absence of Berry's compliance with RCW 70.105, was forced to expend its own funds to cleanup the chemicals. Based on the foregoing, this court concludes that Berry's conduct unquestionably demonstrates wrongful acts, done intentionally, which produced harm to the Estate.

Moreover, Berry's alleged excuses that he did not have adequate funds to remove the chemicals in compliance with RCW 70.-105 and that he was forced off the premises through an unlawful detainer action are unpersuasive when there is an imminent and identifiable danger to the public health and safety. *Cf. Midlantic National Bank v. New Jersey Dept. of Environmental Protection, supra.* (a trustee will not be allowed to abandon property in contravention of a state statute that is reasonably designed to protect the public health or safety from identified hazards). The insufficiency of Berry's excuses is further magnified by the fact that Berry, as the debtor-in-possession, abandoned the premises with full knowledge that the chemical waste presented potentially dangerous environmental and personal safety risks and that such waste was inadequately stored. To allow the Bankruptcy Code to discharge debts resulting from such conduct would create a refuge for polluters who endanger the environment and the public health and safety.

## CONCLUSION

In view of the foregoing evidence, this court concludes that Berry's abandonment coupled with his inadequate storage of toxic chemical waste, constitutes willful and malicious conduct within the meaning of section 523(a)(6). This court further concludes that the total cost to cleanup the abandoned chemicals, including the costs and civil penalty assessment relating to the spill, resulted from Berry's willful and malicious conduct. Accordingly, this court holds that the total cleanup cost in the amount of $48,358.40 is nondischargeable. Having concluded that the cleanup costs are nondischargeable pursuant to section 523(a)(6), this court need not address whether the debts are post-conversion. NOW, THEREFORE, IT IS

ORDERED that the total cleanup cost in the amount of $48,358.40 is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

This memorandum opinion and order shall constitute Findings of Fact and Conclusions of Law in accordance with Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.