**In re Richard L. KELLER, Debtor.**

**Bonny JOHNSON, Appellant,**

v.

**Richard L. KELLER, Appellee.**

**BAP No. CC–88–1314 VPMo.**
**Bankruptcy No. SA 86–01656 PE.**
**Adv. No. SA 86–0616 PE.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 19, 1989.

Decided Oct. 30, 1989.

Elizabeth Grady, Allred, Maroko, Goldberg & Ribakoff, Los Angeles, for appellant.

Richard L. Keeler, Santa Ana, for appellee.

Before VOLINN, PERRIS and MOOREMAN, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

### OVERVIEW

Creditor Bonny Johnson (Johnson) appeals the bankruptcy court's judgment under 11 U.S.C. § 523(a)(6), concluding that her legal malpractice claim against the debtor Richard L. Keller (Keller) is dischargeable. Before Keller's bankruptcy, Johnson sued him in California state court, alleging his negligence with respect to the loss of her daughter's custody. When her former husband was attempting to obtain custody, neither Keller nor Johnson attended the hearing because Keller neglected to calendar the matter and to inform Johnson about it. Keller did not tell Johnson, or the court at subsequent hearings concerning custody, that he had been derelict. John-

son was awarded $789,900 in her malpractice suit.

In Johnson's adversary proceeding, challenging the dischargeability of her judgment claim, the court rejected her contention that Keller's nondisclosure of his negligence constituted wrongful and intentional concealment. We reverse and remand for consideration of whether Keller's unprofessional act in concealing his conduct permitting the default was a material cause of Johnson's injuries.

## FACTS

Johnson and her former husband, Steven Kelly Prouty (Prouty), had on November 11, 1974, their only child, Kari Jeanne Prouty (Kari). On February 23, 1977, their marriage was dissolved. Johnson was awarded Kari's custody, but Prouty retained visitation rights. Johnson claims that Kari was molested by her father in 1977. Without obtaining a court-ordered modification, she restricted his visits and later took Kari out of state for six months from June to November, 1979.

After returning to California, Johnson retained the debtor, appellee Keller, in March, 1980, to obtain an order, restricting Prouty's contact with Kari. She told Keller that Prouty had molested Kari and others.

Keller obtained an order to show cause, setting a hearing on May 23, 1980, concerning increased child support and restricted visitation. Johnson's supporting affidavit expressed nonspecific concerns for Kari's health and safety while with her father. On May 21, 1980, due to marital difficulties she was then having with her current husband, Johnson left for Texas without reaching Keller concerning her departure and the upcoming hearing. By then, Keller had received notice of a hearing set by Prouty's counsel for May 27, 1980, on orders to show cause why (1) Johnson should not be held in contempt for violating Prouty's visitation rights and (2) why Prouty's visitation should not be expanded. However, Keller had not notified Johnson about the hearing set by Prouty's lawyer. Due to Johnson's absence and her lawyer's ignorance of her whereabouts, the May 23 hearing was continued to May 27 and then on that date stricken, while her husband's motion to increase visitation was granted.

At the May 27 hearing, Prouty's lawyer handed Keller papers, setting a hearing for June 11, 1980, on Prouty's motions to obtain custody and to receive child support payments from Johnson. Prouty personally served Keller, mailed the papers to Johnson's last known address, and pursuant to local superior court rule served copies by mail also on the clerk of the court. Johnson did not receive the papers before the hearing, and Keller did not inform her about it despite her resumed contact with him. Neither Keller, nor Johnson, attended the June 11, 1980 hearing at which the court granted Prouty's motions. The court found specifically that service of process was "sufficient and proper;" Johnson's discouragement of contact between Kari and her father violated the court's visitation order and state policy; and the best interests of the child "are being denied and undermined by the custodial parent ..."

Keller learned about the rulings when he saw Prouty's lawyer about one week after the hearing. When he later discussed the matter with Johnson, he did not disclose that he had received the papers but failed to attend the hearing. When she asked why the court changed custody, he explained merely that the court found that she had interfered with Prouty's visitation rights.

Keller prepared and filed a motion for reconsideration of the custody change order. His supporting affidavit stated that Johnson did not appear on June 11 because she did not actually know about the hearing, needed to be out of the county to attend to a family emergency, and had not been personally served with the motion papers. He also expressed concerns about Prouty's mental health and the child's welfare while with her father. At oral argument on July 11, 1980, Keller indicated that the sole basis for the motion was lack of jurisdiction because Johnson had not been personally served. Keller did not mention that he had neglected to tell his client

about the hearing or to calendar it for his own attendance. The motion for reconsideration was denied.

When Johnson returned to California in October, 1980, Kari was placed in foster care. On November 14, Johnson moved through Keller for modification of custody. On November 28, 1980, the court denied her motion, finding that circumstances had not substantially changed since custody had been awarded to the father. Keller did not mention that custody had been awarded Prouty essentially by default due to his failure to inform Johnson and to attend the hearing. Johnson did not learn about Keller's nonattendance until later when she retained new lawyers in connection with the custody issue.

In November, 1980, Kari moved from foster care to her father's residence. Johnson attributed a series of personal misfortunes that followed to Keller's malpractice, including a six-day jail term in March, 1981, for nonpayment of child support. We note that this obligation arose also from the default order entered when Keller failed to appear.

Approximately two months later, in May 1981, Prouty beat Kari to an extent requiring the child's hospitalization and removal from his custody to a foster home. In October, 1981, Kari's custody was restored to appellant Johnson.

Johnson eventually sued Keller, alleging substantial emotional injuries. On February 5, 1986, she obtained a legal malpractice award on a special jury verdict in the amount of $789,900. Keller followed with a petition for relief under Chapter 7 on March 31, 1986. Johnson filed a dischargeability suit on July 7, 1986, which she lost, resulting in this appeal.

## PROCEEDINGS BELOW

Keller through counsel answered Johnson's dischargeability complaint that sought to except the malpractice judgment from discharge under 11 U.S.C. § 523(a)(6), as a debt arising from willful and malicious injury. Johnson alleged that Keller purposely withheld from her the information concerning the hearings noted for May and June, 1980, by Prouty's lawyer; deliberately missed the June 11, 1980, hearing; prevented her from taking steps to protect her and her daughter's interests; filed an inadequate or frivolous motion for reconsideration that he knew could not be granted; intentionally and wrongfully concealed his own negligence from her and the court with knowledge that she and her daughter would be harmed and that disclosure of his mistakes or negligence would have prevented the harm.

After Keller elected to represent himself, he failed to comply with local rules and practice regarding preparation of the pretrial statement and did not appear at the pretrial hearing. As a consequence, the court struck his answer and entered a default. A "prove-up" hearing was then set at which evidence was taken and the case submitted. Johnson also submitted the declaration of Harry Shafer, a former superior court judge, who testified "had Mr. Keller advised the court it was due to his negligence that no one appeared on June 11th on behalf of his client that no court would have allowed the June 11, 1980 order changing custody to stand."

The bankruptcy court's memorandum decision was entered on April 1, 1988. The court found that Johnson had failed to prove that Keller intentionally committed any wrongful act. Specifically, he found that Keller's failure to properly calendar the June, 1980, hearing, was negligent. The court found further that Keller's decision to base a motion for reconsideration of the June, 1980, order modifying custody upon jurisdictional grounds, rather than to disclose his negligence, was essentially a reasonable strategy made in good faith. Then, the court concluded that Keller's lack of success or "wrong strategic decision" was not sufficient to find that he acted willfully or with malice. Judgment that Keller's debt to Johnson was dischargeable was entered on April 1, 1988. Johnson timely filed her notice of appeal on April 8, 1988.

## CONTENTIONS ON APPEAL

Johnson assigns error on appeal to the court's findings that (i) Keller's nondisclo-

sure of his negligence was not willful and malicious, and (ii) Keller's decision to use lack of jurisdiction as the basis for the motion for reconsideration of the order awarding custody of Kari to Prouty was a legitimate strategic choice. She argues that a debt arising from breach of a professional duty, including disregard of acceptable professional practice, with knowledge of the probable resulting harm, should be nondischargeable under section 523(a)(6).

■ Keller, noting that the state court judgment was based entirely upon allegations of negligence, argues, without merit and contrary to well-established law that Johnson is barred by *res judicata* from asserting in her dischargeability proceedings that his conduct was not only negligent, but intentional and malicious. *See, e.g., Tilbury v. Walden (In re Tilbury),* 74 B.R. 73, 78 (9th Cir. BAP 1987) (citing *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979)), *aff'd without opinion,* 851 F.2d 361 (9th Cir.1988). As stated in *Tilbury,* a prior state court judgment has no *res judicata* effect on dischargeability, which involves issues of bankruptcy law not necessarily determined in the state court suit and subject to the exclusive jurisdiction of the bankruptcy court. 74 B.R. at 78.

Keller also urges that his breach of duty did not cause Johnson's injuries. He asserts that her absence prevented him from offering any evidence that Prouty abused Kari; his motion for reconsideration on the grounds of lack of jurisdiction was warranted under California law; and Johnson had her day in court on her motion to modify custody in November, 1980.[1]

## ISSUE AND STANDARD OF REVIEW

■ Neither party explicitly addressed the question of the appropriate standard of review. The main issue presented to the panel is whether Keller's choice not to disclose his negligence to Johnson and to the state court upon applications for relief

from the order granting custody to Prouty amounted to willful and malicious concealment for purposes of section 523(a)(6). This is a factual question that we review for clear error. Bankr.Rule 8013; *Sdrawde Titleholders, Inc. v. Mills (In re Mills),* 73 B.R. 638, 640 (9th Cir. BAP 1987), *rev'd on other grounds,* 841 F.2d 902 (9th Cir.1988).

## DISCUSSION

■ Under 11 U.S.C. § 523(a)(6), a debtor is not discharged from any debt "for willful and malicious injury...." It has been established in this circuit that reckless conduct is insufficient, but that subjective intent to do the wrongful act is required. *Moraes v. Adams (In re Adams),* 761 F.2d 1422, 1426–28 (9th Cir.1985); *Wilson v. Ray (In re Ray),* 51 B.R. 236, 239–40 (9th Cir. BAP 1985). Specific intent to harm the individual actually injured by the wrongful conduct is not required. *Impulsora Del Territorio Sur, S.A. v. Cecchini (In re Cecchini),* 780 F.2d 1440, 1442–43 (9th Cir. 1986). The Ninth Circuit has formulated the standard as follows: "[w]hen a wrongful act ..., done intentionally, necessarily produces harm and is without just cause or excuse, it is 'willful and malicious' even absent proof of a specific intent to injure." *Id.* at 1443. The underlying questions to be answered are: "1–whether the appellant committed a wrongful and intentional act; 2–whether such action produced harm; and 3–whether such action was without just cause or excuse." *Andrews v. Manser (In re Manser),* 99 B.R. 434, 436 (9th Cir. BAP 1989).

The requisite animus has been variously elaborated as follows: (1) the debtor knew, expected, or should have known, from an objective perspective, that his conduct was certain or almost certain to cause harm, *see Fed. Deposit Ins. Corp. v. Wright (In re Wright),* 87 B.R. 1011, 1020 (Bankr.D.S.D. 1988) (alleged damage arose from misapplication of bank funds by a fiduciary); (2)

---

1. In support of an argument that any consequence of wrongful conduct attributable to him was superseded, he also mentions juvenile court proceedings, preceding Kari's placement with Prouty. However, the facts considered and found there, as well as any legal conclusions, are not part of the record before the panel.

644

the debtor's conscious disregard of his duties without just cause or excuse in a manner that he should have known presented a risk of harm, *see Norton v. Dean (In re Dean)*, 79 B.R. 659, 662 (Bankr.N.D.Tex.1987) (emotional distress attributed to debtor therapist's sexual activities with his patient constituted a nondischargeable debt because the sexual relationship was intentional, done in conscious disregard of his duty, and necessarily caused the damage claimed); and (3) the debtor's willingness to risk a creditor's loss due to the prospect of personal benefit, *see Thorp Credit & Thrift Co. v. Pommerer (In re Pommerer)*, 10 B.R. 935, 941 (Bankr. D.Minn.1981) (an obligation arising from the debtors' conversion of their lender's collateral was held nondischargeable because it was done with the knowledge that if they succeeded their farm would be saved, but if they failed, while the creditor would suffer, they would be no worse off).

The standards as discussed above of subjective intent and implied malice have been applied in other professional malpractice cases besides *Dean*. *E.g., Perkins v. Scharffe (In re Scharffe)*, 817 F.2d 392 (6th Cir.1987), *cert. denied*, 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 112 (1987) (podiatrist); *First Nat'l Bank of Albuquerque v. Franklin (In re Franklin)*, 726 F.2d 606 (10th Cir.1984) (osteopathic surgeon). The decision in *Franklin* concerned prescribing an anesthetic without taking a patient history, overanesthetizing the patient, and covering up some records relating to the surgery and the patient's cardiac arrest. *Id.* at 610. The bankruptcy court's conclusion of nondischargeability of a state court malpractice judgment was upheld on appeal.

In substantial reliance upon *Franklin*, the court in *Perkins* reversed a ruling for dischargeability, related to a consent judgment for podiatric malpractice, that was based upon absence of intent to harm the patient. 817 F.2d at 394, *rev'g*, 40 B.R. 942, 945 (Bankr.E.D.Mich.1984). The court approved and applied the standard of a deliberate and intentional act which necessarily leads to injury. 817 F.2d at 394.

## CONCLUSION AND ORDER

The case below was tried mainly on the theory of wrongful intent, and was decided on the basis that no more than negligence had been demonstrated. When Johnson argued in the bankruptcy court that Keller's failure to disclose his negligence to the state court was a deliberate cover-up that constituted wrongful concealment, the court characterized Keller's action instead as an unsuccessful, possibly negligent, strategy that did not constitute willful and malicious conduct.

However, even as the court below acknowledged, Keller made a conscious choice. To designate it as a "strategic decision" does not invest his action with a negligent character. The record as a whole supports, contrary to the findings made, the inference that he acted intentionally and without just cause or excuse when deciding which grounds to assert in support of Johnson's motions for relief. He chose to sacrifice relative certainty of success in order to avoid the adverse personal consequences that could result from disclosure of his mistakes. He was duty-bound professionally to inform Johnson about the hearings set by Prouty; failing that and in light of Prouty's success by default, he was obligated to tell Johnson and the court about his lapses that contributed to her default. Thus, Keller's choice to reject an available strategic alternative was made for personal reasons at the expense of his client's interest, unprofessional and wrongful.

The court gave no consideration to the opinion testimony of Johnson's expert, Harry Shafer, the retired California superior court judge, that reconsideration would have been granted and Johnson would have secured her day in court with respect to a custody change in favor of Prouty if Keller had not concealed, and brought to the court's attention, his negligence. Keller's conduct was actionable under section 523 *if* reasonably and materially related to the harmful result. The court below apparently did not consider this aspect of the dispute.

Although it appears likely that disclosure would have resulted in a fuller hearing for Johnson on the custody issue, it is not entirely clear that Johnson would have retained custody and avoided the emotional distress and other consequences alleged. In arguing that his actions did not injure Johnson, Keller cites her day in court and lack of success on November 28, 1980, with respect to her application for modification. Yet, it is undisputed that the burden of proof with respect to the original custody change sought by Prouty differed significantly from that required in her later challenge to Prouty's custody, which was substantial change in circumstances *since* the father had obtained charge of the child.

Accordingly, the judgment below is REVERSED. The adversary proceeding is REMANDED for consideration whether Keller's failure originally to advise Johnson to appear coupled with his intentional concealment of his unprofessional conduct from the court was a material cause of the harm suffered by Johnson and her resulting claim, which was liquidated in her state court judgment.