**In re Efstathios KAPERONIS, Debtor.**

**George KONEFAL, Plaintiff,**

**v.**

**Efstathios KAPERONIS, Defendants.**

**Bankruptcy No. 93 B 20033 (HS).**
**No. 93 ADV. 5155A.**

United States Bankruptcy Court,
S.D. New York.

July 22, 1993.

Levy Phillips & Konigsberg, New York City, for George Konefal.

Rosenberg, Rosenberg & Weiner, Brooklyn, NY, for debtor.

## DECISION ON OBJECTION TO DISCHARGEABILITY OF DEBT

HOWARD SCHWARTZBERG, Bankruptcy Judge.

George Konefal ("Konefal") has objected to the dischargeability of the debtor's obligation to him pursuant to 11 U.S.C. § 523(a)(6) on the ground that the claim arose as the result of the debtor's willful and malicious conduct. Specifically, the plaintiff alleges that his claim against the debtor was incurred through the debtor's participation in a drag race. The debtor resists the plaintiff's action. In opposition, he asserts that he was not drag racing when the collision occurred. He also argues that even if he was drag racing, participation in a drag race does not constitute willful and malicious injury as contemplated by 11 U.S.C. § 523(a)(6).

### STATEMENT OF FACTS

1. The debtor, Efstathios Kaperonis, filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on January 7, 1993. A trustee was duly appointed to administer the debtor's estate in bankruptcy. On March 11, 1993, the trustee, having discovered that there were no assets in the estate, filed with the court a report of no distribution.

2. The plaintiff holds a judgment against the debtor. The judgment, in the amount of $315,000.00, was entered following the trial of a personal injury action brought by the plaintiff against the debtor in New York State Supreme Court, Bronx County in 1988. In that action, a jury found that the debtor proximately caused the plaintiff's injuries when the automobile driven by the debtor collided with his automobile.

3. On August 7, 1992, the debtor's insurance carrier paid $165,000.00 of the judgment. Thereafter, the plaintiff sought to recover the remainder, or $150,000.00, plus interest accruing from August 7, 1992, from the debtor personally. Subsequently, the debtor filed his petition in bankruptcy.

4. The plaintiff commenced this adversary proceeding to declare his claim nondischargeable pursuant to 11 U.S.C. § 523(a)(6) on the ground that his debt is for injuries he sustained as a result of the debtor's willful and malicious conduct. The plaintiff alleges that his injuries were incurred while the debtor was participating in a drag race.

5. At the state court proceeding, the plaintiff did not allege that the debtor was participating in a drag race when he collided with the plaintiff because that issue was not necessary to establish liability.

6. The collision in issue occurred on Saturday, October 11, 1986 at 11 o'clock p.m. on Central Park Avenue in Yonkers, New York. At the hearing, the plaintiff and Sgt. Jerome Chesnard ("Chesnard") of the Yonkers Police Department described the area where the incident occurred. Central Park Avenue is a two-way traffic artery going north and south with three lanes in each direction and a center divider. At the point where Central Park Avenue intersects with Verona Avenue there is a fourth left hand turning lane in the northbound direction. In order for a driver to change from the northbound direction to the southbound direction, the driver must first proceed into the left hand turning lane. There is a traffic light at the turning lane. From the turning lane, at the green signal, the driver must travel west, crossing over the southbound lanes, and enter a "jug handle." The jug handle is a loop which permits the driver to make a left turn and proceed on Central Park Avenue in the southbound lanes. Chesnard testified that when the signal is green at the turning lane, the lights at the southbound lane are red.

7. The plaintiff testified that on the evening of October 11, 1986, he was driving his Volkswagen Jetta north on Central Park Avenue. Because the plaintiff wanted to go south, he entered the turning lane at the Verona Avenue intersection. The plaintiff testified that when the signal at the intersection was green, he proceeded to make a left turn to enter the jug handle. At that point, the plaintiff related that a

red Pontiac Trans Am crashed into his vehicle. The plaintiff testified that he sustained multiple injuries as a result of the collision and that a passenger in his car was also seriously injured.

8. The debtor testified that on the evening of the crash, he was driving a red Pontiac Trans Am which belonged to his aunt. He described the car as having external loud speakers which may be used to communicate with other vehicles. The plaintiff argues that the debtor used the speakers to challenge other cars driving along Central Park Avenue to race.

9. Chesnard investigated the scene of the crash shortly after the collision occurred. He described Central Park Avenue as a road with heavy traffic. Chesnard testified that the speed limit on the road is 40 miles per hour. He concluded that the debtor was traveling at a rate which significantly exceeded the limit from his examination of the damaged automobiles and the tire marks on the road. He explained that the lack of skid marks on the road indicated that the debtor did not apply the brakes prior to the collision. Chesnard noted that the plaintiff's car was pushed at least 40 feet from the point of impact.

10. Chesnard also testified that the traffic lights which regulated traffic on Central Park Avenue in the vicinity of the collision were synchronized, or controlled by timers. He stated that from his investigation of the timers, it is clear that prior to the collision, the debtor advanced through a red traffic light. He further testified that the traffic light and the timers were working properly at the time of the crash. Chesnard described weather on the night of the collision as clear and dry.

11. Dr. Michael Gerimino ("Gerimino") was driving along Central Park Avenue on the evening of the collision. He testified that he saw the red Trans Am driven by the debtor speeding in the southbound lanes of Central Park Avenue along with another car. Gerimino estimated that the cars, which passed his, were proceeding at a rate of 60–65 miles per hour. He recalled that both cars sped through a red traffic light. Gerimino also testified that the cars appeared to be in a race.

12. Camille Gerimino, a passenger in Gerimino's car, testified that she saw the red Trans Am and another car pass Gerimino's vehicle at an excessive rate of speed. She recalled that the engines of the cars were extremely loud. She saw the cars drive through a red light. She stated that the cars appeared to be racing each other.

13. Brian J. Goldin ("Goldin") witnessed the collision. At the hearing, he related that shortly before the crash, while he was stopped at the traffic light on Central Park Avenue at the Verona Avenue intersection, he saw the red Trans Am and another car speeding and shifting lanes. Goldin also testified that he saw the red Trans Am drive through the red light. After the crash, he told the police officers at the scene that he believed that the cars were racing.

14. It is clear from the testimony adduced at the hearing that the debtor was engaged in a drag race when the red Trans Am that he was driving collided with the plaintiff's car. The fact that the cars were travelling at excessive speeds on a clear night, that they shifted lanes and passed through a red light, and that there were no skid marks on the road near the site of the crash support this conclusion.

15. New York Vehicle and Traffic Law § 1182 prohibits any races or contests for speed on any highway without the permission of the specific governmental entity that controls the roadway. Thus, drag racing, absent authorization, is a wrongful act.

16. The plaintiff failed to show that the debtor acted with specific intent to cause injury to him and his vehicle. The plaintiff also failed to introduce any evidence that the debtor acted out of ill will or spite towards the plaintiff.

17. The plaintiff argues that his claim against the debtor for injuries that he sustained in the crash is non-dischargeable under 11 U.S.C. § 523(a)(6) because it results from the debtor's participation in a drag race. The plaintiff alleges that drag racing is a willful and malicious activity.

18. The debtor argues that his obligation to the plaintiff should not be excepted from discharge. Initially, the debtor asserts that he was not engaged in a drag race when the collision occurred. In support of this position, he contends that the jury in the state court proceeding which preceded this hearing did not find that the debtor was drag racing when the crash occurred. The debtor also argues that even if he was drag racing, involvement in a drag race is not a willful and malicious activity within the meaning of 11 U.S.C. § 523(a)(6).

## DISCUSSION

■ Pursuant to 11 U.S.C. § 523(a)(6), an individual debtor will not be discharged from any debt that is the result of willful and malicious injury. In this case, this court has found that the debtor was engaged in a drag race when he caused the plaintiff's injuries. Although the issue of drag racing was not addressed in the state court action which preceded the hearing on dischargeability, the plaintiff is not barred by *res judicata* or by collateral estoppel from making this assertion now.

Under the doctrine of *res judicata,* a judgment on a prior action, bars a second suit involving the parties or their privies based on the same cause of action. *Parklane Hoisery Co., Inc. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). Manifestly, this proceeding regarding the dischargeability of the plaintiff's claim against the debtor is separate and distinct from the personal injury action brought by the plaintiff against the debtor in the state court. Indeed, it is well settled that in deciding whether a debt is dischargeable, a bankruptcy court may consider evidence that was not introduced during the state court action. *Brown v. Felsen,* 442 U.S. 127, 139, 99 S.Ct. 2205, 2213, 60 L.Ed.2d 767, 776 (1979). Thus, *res judicata* does not bar the plaintiff from raising the issue of drag raising at this proceeding.

Collateral estoppel precludes a party from relitigating issues actually litigated in a prior action which were necessary to the outcome of that action. *Parklane Hoisery,* 439 U.S., at 326 n. 5, 99 S.Ct. at 649 n. 5. In this case, there was no evidence that the issue of drag racing was not litigated in the state court action which preceded this trial. Furthermore, the issue of drag racing was not necessary at the state court level for a determination of liability. Accordingly, the plaintiff is not now precluded from litigating the issue.

■ The standard of proof required to establish an exception to discharge under § 523(a) is the preponderance of evidence. *Grogan v. Garner,* 498 U.S. 279, 285, 111 S.Ct. 654, 658, 112 L.Ed.2d 755, 767 (1991). Thus, to establish the non-dischargeability of his claim, the plaintiff must show that, more likely than not, the harm which resulted from the debtor's participation in a drag race constitutes willful and malicious injury within the meaning of the statute. For purposes of 11 U.S.C. § 523(a)(6), the term willful means that the act was done deliberately or intentionally. *See* S.Rep. No. 95–989, 95th Cong., 2d Sess. 79 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad. News, 1978, pp. 5787, 5865. Specific intent to harm or injure is not required. *Johnson v. Keller (In re Keller),* 106 B.R. 639, 643 (9th Cir. BAP 1989); *In re McQueen,* 102 B.R. 120, 124 (S.D.Ohio 1989). An injury is malicious under 11 U.S.C. § 523(a)(6) when it was done consciously without just cause or excuse. *In re Galizia,* 108 B.R. 63, 69 (W.D.Pa.1989). The act need not have been done out of spite or ill will. *Vulcan Coals, Inc. v. Howard,* 946 F.2d 1226, 1229 (6th Cir.1991); *In re Morton,* 100 B.R. 607, 611 (N.D.Ga.1989); *In re Valentine,* 104 B.R. 67, 69 (S.D.Ind.1988); *In re Condict,* 71 B.R. 485, 487 (N.D.Ill.1987). In general, courts have held that willful and malicious injury occurs when a wrongful act done intentionally necessarily produces the harm that results. *Perkins v. Scharffe,* 817 F.2d 392, 394 (6th Cir.1987), *cert. denied,* 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 112 (1987); *Impulsora Del Territorio Sur v. Cecchini (In re Cecchini),* 780 F.2d 1440, 1443 (9th Cir.1986); *In re Shervin,* 112 B.R. 724, 736 (E.D.Pa.1990); *In re Guy,*

101 B.R. 961, 982 (N.D.Ind.1988); *In re De Rosa*, 20 B.R. 307, 313 (S.D.N.Y.1982).

■ In this case, the plaintiff established that the debtor's involvement in the race was intentional. It can be inferred from the evidence adduced at the trial that the debtor deliberately engaged in the speed contest particularly from the facts that he was traveling at an excessively high rate of speed along side of another vehicle, that he failed to stop at a red traffic light and that he did not slow down prior to the collision. The plaintiff has also established that the debtor's participation in drag racing was malicious. Drag racing is wrongful activity which is prohibited by law. Manifestly, drag racing on a busy street like Central Park Avenue necessarily produces harm. Accordingly, because the plaintiff has proven that the debtor's obligation to him was incurred as the result of the debtor's willful and malicious injury, his claim against the debtor is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).

It should be noted that courts in several other districts, in interpreting 11 U.S.C. § 523(a)(6), have construed the term "willful and malicious injury" more strictly. These courts have defined injury, for nondischargeability purposes, as deliberate or intentionally inflicted and have held that specific intent to cause the resulting injury is necessary to prove nondischargeability. *Dorr, Bentley & Pecha, CPA's, P.C. v. Pasek (In re Pasek)*, 983 F.2d 1524, 1527 (10th Cir.1993) *Hartley v. Jones (In re Hartley)*, 869 F.2d 394, 395 (8th Cir.1989); *In re Noller*, 56 B.R. 36, 38 (E.D.Wis.1985); *In re Finnie*, 10 B.R. 262, 264 (D.Mass. 1981). This court will not follow these cases because it is not bound by them under the doctrine of *stare decisis* and because it is not persuaded by the underlying reasoning which supports them. Clearly, intentional tortfeasors should not be granted a safe haven under the Bankruptcy Code for their deliberate, wrongful acts.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(I).

2. The plaintiff has demonstrated, by the preponderance of the evidence, that his claim against the debtor is the result of the debtor's willful and malicious injury. Therefore, the plaintiff's claim for $150,-000.00 plus interest accruing from August 7, 1992 is nondischargeable under 11 U.S.C. § 523(a)(6).

SETTLE ORDER on notice.