**In re Thomas M. KELLY, Debtor.**

**Thomas M. KELLY, Appellant,**

v.

**Chris OKOYE, Appellee.**

**BAP No. EC–94–2064–ROV.**
**Bankruptcy No. 92–21318–B–7.**
**Adv. No. 92–2140.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted March 23, 1995.

Decided May 2, 1995.

Howard S. Nevins, Sacramento, CA, for appellant.

William A. Kent, Irvine, CA, for appellee.

Before RUSSELL, OLLASON and VOLINN, Bankruptcy Judges.

### OPINION

RUSSELL, Bankruptcy Judge:

This appeal arises from the partial granting of a motion for summary judgment declaring a state court judgment for legal malpractice to be nondischargeable pursuant to § 523(a)(6) [1]. The debtor appeals. We REVERSE and REMAND.

## I. FACTS [2]

The appellee, Chris Okoye ("Okoye") was terminated from his employment as a senior accountant in Los Angeles, California. Okoye retained George Abbott ("Abbott"), an attorney licensed in Nevada to represent him in a wrongful termination suit against Okoye's employer, Transaction Technology, Inc. ("TTI") and its parent company, Citicorp Corporation ("Citicorp").

Since Abbott was not licensed to practice law in California, he consulted with the debtor/appellant, Thomas Michael Kelly ("Kelly"). Kelly was a licensed California attorney as well as a justice court judge for Alpine County, California.

### 1. Agreement to Represent

Pursuant to an oral agreement, Okoye paid Abbott $1,000 to represent him in California. Unable to practice law in California, Abbott contacted Kelly, who used an office in Abbott's building located in Nevada.

Kelly agreed that Abbott could use his name and California bar number on plead-

---

1. Unless otherwise indicated, all Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

2. Okoye has moved to strike certain portions of Kelly's Excerpt of Record on the ground that Kelly has included a "self-serving declaration" which was not before the court. We deny the motion to strike for two reasons. First, the declaration was filed in opposition to Okoye's motion for summary judgment. As such, it was properly before the bankruptcy court and this panel on appeal. Second, it is immaterial whether the declaration is self-serving or a statement against one's interest.

ings filed on Okoye's behalf, with the understanding that Abbott would undertake all of the work. Abbott also agreed to appear *pro hac vice* in both actions; however, Abbott never applied for such admission in either the state court or federal court cases.

## 2. State Court Case

The state court complaint for wrongful termination was filed on February 17, 1987. After many unanswered discovery requests, Citicorp sought sanctions. Okoye was not informed of Citicorp's request for sanctions, and neither Kelly nor Abbott handled the discovery or made court appearances. The state court granted sanctions in the amount of $814 and ordered Kelly to file an amended complaint.

Since the sanctions did not remedy the situation, Citicorp filed a motion to terminate the state court case. Because Citicorp's attorney personally served him, Okoye received a notice of the motion to terminate. Presumably, Kelly and Abbott also received notice of the motion. The state court judge dismissed the case for failure to file the amended complaint and for failure to respond to the court's orders regarding discovery. In addition, the state court judge ordered sanctions of $2,500 payable by Kelly and Okoye to Citicorp.

Apparently, the sanctions were satisfied by Okoye after his automobile was seized by Citicorp pending payment of the sanctions.

## 3. Federal Court Case

Kelly and Abbott also filed a complaint in federal court in Sacramento. The federal court case fared no better than the state court case. Kelly again allowed Abbott the use of his name and California bar number.

The federal court complaint was filed on April 7, 1987. Kelly again failed to comply with a court order to serve the complaint and to file a return of service with the court. Kelly also did not attend a court ordered status conference. As a result, Kelly and Okoye were sanctioned $250, and the federal court case was ultimately dismissed.

## 4. Okoye's Legal Malpractice Action

Okoye eventually brought a legal malpractice action in state court based on breach of contract, fraud and negligence against Kelly and Abbott. Okoye also sought punitive damages. The state court found that only Abbott breached a contract with Okoye. As for Okoye's causes of action based on fraud, the state court found in favor of Kelly and Abbott; however, the state court found that Kelly and Abbott committed legal malpractice. The state court entered a verdict of $351,000 against Kelly and $371,000 against Abbott and declined to impose punitive damages.

## 5. Kelly's Bankruptcy Petition

On February 12, 1992, Kelly filed a chapter 11 petition, which was later converted to chapter 7.

Okoye timely filed a complaint to determine the dischargeability of the $351,000 state court judgment for legal malpractice. Okoye based his complaint on §§ 523(a)(2), (4) & (6).

In that adversary proceeding, Okoye filed a motion for summary judgment. The bankruptcy court granted the motion in part, concluding that the doctrine of collateral estoppel applied to the state court's finding of "willful and malicious" injury to Okoye. The bankruptcy court denied Okoye's motion for summary judgment under §§ 523(a)(2) & (4).

On August 30, 1994, the bankruptcy court entered an order finding the debt nondischargeable pursuant to § 523(a)(6). Kelly timely filed his notice of appeal.

## II. ISSUES

A. Whether the bankruptcy court erred by giving collateral estoppel effect to the state court judgment.

B. Whether the appellee should be sanctioned for his failure to cite to, and his mischaracterization of, the record.

## III. STANDARD OF REVIEW

■ A grant of summary judgment is reviewed *de novo. Halverson v. Skagit County,* 42 F.3d 1257, 1260 (9th Cir.1994); *In*

re Zelis, 161 B.R. 469, 472 (9th Cir. BAP 1993). An appellate court's review is governed by the same standard used by the trial courts under Fed.R.Civ.P. 56(c). Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986). Fed.R.Civ.P. 56 is made applicable to bankruptcy proceedings through Fed.R.Bankr.P. 7056. An appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the trial court correctly applied the relevant substantive law. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994).

■ The panel applies a de novo standard for reviewing the question of the availability of collateral estoppel. In re Berr, 172 B.R. 299, 304 (9th Cir. BAP 1994).

## IV. DISCUSSION

### A. Collateral Estoppel

■ In order for a prior judgment to be entitled to collateral estoppel effect, five elements must be met[3]:

1) The issue sought to be precluded from relitigation must be identical to that decided in a former proceeding;

2) The issue must have been actually litigated in the former proceeding;

3) It must have been necessarily decided in the former proceeding;

4) The decision in the former proceeding must be final and on the merits; and

5) The party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

Clark v. Bear Stearns & Co., Inc., 966 F.2d 1318, 1320 (9th Cir.1992); Berr, 172 B.R. at 306; Gikas v. Zolin, 25 Cal.Rptr.2d 500, 505, 863 P.2d 745, 750 (1993) (quoting Lucido v. Superior Court, 51 Cal.3d 335, 272 Cal.Rptr. 767, 769, 795 P.2d 1223, 1225 (1990), cert. denied, 500 U.S. 920, 111 S.Ct. 2021, 114 L.Ed.2d 107 (1991)); Gutierrez v. Superior Court, 24 Cal.App. 4th 153, 29 Cal.Rptr.2d

376, 378 (1994), cert. denied, —— U.S. ——, 115 S.Ct. 1426, 131 L.Ed.2d 308 (1995) (quoting Lucido, 272 Cal.Rptr. at 769, 795 P.2d at 1225). See generally, 1B James W. Moore et al., Moore's Federal Practice ¶ 0.441–43 (2d ed. 1994).

■ The party seeking to assert collateral estoppel has the burden of proving all the requisites for its application. To sustain this burden, a party must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action. Any reasonable doubt as to what was decided by a prior judgment should be resolved against allowing the collateral estoppel effect. Spilman v. Harley, 656 F.2d 224, 227–28 (6th Cir.1981); Matter of Merrill, 594 F.2d 1064, 1067 (5th Cir.1979).

■ The doctrine of collateral estoppel serves the purpose of protecting parties from multiple lawsuits and the possibility of inconsistent decisions, and it conserves judicial resources. Lytle v. Household Mfg., Inc., 494 U.S. 545, 553, 110 S.Ct. 1331, 1337, 108 L.Ed.2d 504 (1990); Montana v. U.S., 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979); Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). The United States Supreme Court has recognized that the doctrine of collateral estoppel applies in dischargeability proceedings. Grogan v. Garner, 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, n. 11, 112 L.Ed.2d 755 (1991). Thus, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. Montana, 440 U.S. at 153, 99 S.Ct. at 973.

#### 1. Identity of Issue

■ This case hinges on whether the issues before the bankruptcy court are similar to the issues which were before the prior state court.

---

3. We note that the elements for collateral estoppel are the same under either California or federal law.

Section 523(a)(6) provides that a debtor is not discharged from any debt "for willful and malicious injury...." The Ninth Circuit Court of Appeals has required creditors to show: (1) that the debtor acted intentionally; (2) that such action produced harm; and (3) that the act was without just cause or excuse. *In re Britton,* 950 F.2d 602, 605 (9th Cir. 1991); *In re Cecchini,* 780 F.2d 1440, 1443 (9th Cir.1986); *In re Manser,* 99 B.R. 434, 436 (9th Cir. BAP 1989).

The term "willful," according to the legislative history of § 523(a)(6) means "deliberate or intentional." H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6320–21; S.Rep. No. 989, 95th Cong., 2d Sess. 79 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5865.

The Ninth Circuit has stated that an act is malicious if its predictable result would almost certainly harm a creditor. *In re Littleton,* 942 F.2d 551, 555 (9th Cir.1991).

The bankruptcy court concluded that the state court judgment was entitled to collateral estoppel effect since the facts determined by the state court satisfied the requirements of § 523(a)(6). We disagree.

Both the bankruptcy court and Okoye rely on *In re Keller,* 106 B.R. 639 (9th Cir. BAP 1989), for the proposition that state court judgments for legal malpractice are nondischargeable as a matter of law. At first blush, *Keller* may look like an analogous case, but on closer review the facts tell a much different story.

In *Keller,* the client retained the debtor/attorney ("Keller") to obtain an order restraining the client's former husband from visiting the client's only child based on allegations that the former husband molested the child. Around the same time, the former husband filed a motion for an order expanding his visitation rights.

A hearing was set to show cause why the client should not be held in contempt for violating the former husband's visitation rights. At that hearing, the former husband's counsel personally served Keller with notice of a hearing to obtain custody and child support payments. A hearing was held on the motion to obtain custody and support payments, which was not attended by Keller or his client. The court ruled that the client had violated the visitation order by denying the former husband any contact with the child and awarded custody to the former husband.

When Keller later discussed the matter with his client, he did not disclose that he had received the papers but failed to attend the hearing. When the client inquired why the court had changed custody, Keller explained that the court found that the client had interfered with the former husband's visitation rights.

Keller filed a motion for reconsideration of the custody change order. In his declaration to the motion, Keller stated that his client did not appear at the hearing because she did not actually know about the hearing. At the hearing, Keller indicated that the sole basis for the motion was lack of jurisdiction because the client had not been personally served. Keller did not mention that he had neglected to tell his client about the hearing or to calendar it for his own attendance. The motion for reconsideration was denied.

A few months later, the client instructed Keller to file a motion for a modification of custody. Keller again did not mention that custody had been awarded by default to the former husband. The motion was denied. The client did not learn about Keller's nonattendance until she retained new lawyers in connection with the custody issue.

The client eventually sued Keller, alleging substantial emotional injuries. The client obtained a legal malpractice award of $789,900. Keller filed a chapter 7 petition. The client filed a dischargeability complaint. In that complaint, the client alleged that: (1) Keller purposely withheld from her the information concerning the hearings; (2) deliberately missed a hearing; (3) prevented her from taking steps to protect her and her child's interest; (4) filed an inadequate or frivolous motion for reconsideration that he knew could not be granted; and (5) intentionally and wrongfully concealed his own negligence from her and the court with knowledge that she and her child would be harmed and that disclosure of his mistakes or negligence

would have prevented the harm. The bankruptcy court determined that the debt was dischargeable.

On appeal, the BAP reversed and remanded, noting that Keller chose to sacrifice relative certainty of success in order to avoid the adverse personal consequences that could result from disclosure of his mistakes. The bankruptcy court apparently gave no consideration to a retired state court judge who testified that he would have granted the motion for reconsideration if Keller had not concealed, and had brought to the court's attention, his negligence.

On remand, the bankruptcy court was instructed to consider whether Keller's failure originally to advise the client to appear coupled with his intentional concealment of his unprofessional conduct from the court was a material cause of the harm suffered by the client.

In this case, there was no evidence of an intentional deception by Kelly. The state court found Kelly liable for malpractice. The evidence in this case related to negligence and Kelly's failure to communicate with Okoye. There were no acts by Kelly which were found by the state court to necessarily produce harm to Okoye. For instance, the intentional act of allowing Abbott to use his name and California bar number is neither related to an intentional *deception* nor was it necessarily productive of harm to Okoye.

Okoye additionally argues that under California law, the failure to do something may constitute "willful misconduct" and that Kelly's omissions were done deliberately. Okoye in his opening brief states there is "a plethora of authority" for the proposition. No case has been cited in which a California court has held that omissions causing legal malpractice constitute "willful misconduct" absent some type of culpable conduct. In any event, the standard of willfulness and maliciousness under § 523(a)(6) is a federal rather than state standard.

Our review of the state court judgment indicates that Kelly's conduct only amounted to negligence, consisting of several omissions and not an intentional deliberate act.[4]

In the state court action, Okoye pleaded causes of action for breach of contract, fraud and negligence. The state court only found against Kelly on the negligence cause of action and awarded $351,000 to Okoye without imposing punitive damages. Some common examples of the state court findings include:

29. The conduct on the part of the defendants in the handling of this case amounted to gross negligence based upon deliberate and affirmative acts.

. . . .

50. During the trial and closing argument related thereto defendants conceded that they had been guilty of professional negligence. There was also evidence that Mr. Kelly had made such a concession in his pre-trial deposition and in his filing of a joint status questionnaire at the pre-trial status conference.

. . . .

52. The performance of the defendants in this case was so clearly contrary to established standards that the court is able to find professional negligence without the aid of expert testimony, especially in view of the admissions made by the parties, the clear violations of the state statute applicable thereto and the rules of professional responsibility.

53. The court finds that the defendants were guilty of a breach of fiduciary duty as each had entered into an attorney-client relationship with the plaintiff and each had committed multiple violations thereof, not the least of which was the failure to apprise the plaintiff of any of the questionable arrangements agreed to and engaged in by the defendants.

. . . .

61. The court finds that the defendant Thomas Kelly has been guilty of gross negligence as a fiduciary under the standards and laws of this state and that his conduct has caused plaintiff to sustain seri-

4. We also do not agree with Okoye that the state court intended to refer to legal malpractice rather than negligence. We also find it surprising that Okoye disagrees with the state court's finding concerning Kelly's failure to act, despite the fact that Okoye's counsel prepared the state court judgment.

ous financial and personal injury and damages, as set forth herein.

The two issues were not identical. The state court judgment made findings that related to a negligence cause of action and not intentional conduct. The state court judgment only established gross negligence at best and not willful and malicious conduct as required by § 523(a)(6).

Thus, the bankruptcy court erred in ruling that the debt was nondischargeable pursuant to § 523(a)(6) based on the doctrine of collateral estoppel.[5] *See In re Ikner*, 883 F.2d 986, 990 (11th Cir.1989) (holding mere showing of reckless disregard of duty does not establish "willful and malicious" injury); *In re Posta*, 866 F.2d 364, 367 (10th Cir.1989) (stating acts caused by the debtor's negligence or recklessness are not encompassed by § 523(a)(6)); *In re Compos*, 768 F.2d 1155, 1159 (10th Cir.1985) (finding of reckless disregard insufficient under § 523(a)(6)); *In re Woolner*, 109 B.R. 250, 254 (Bankr. E.D.Mich.1990) (stating hypothetically that a debt arising from professional malpractice would be dischargeable even if the conduct was reckless); *In re Donnelly*, 6 B.R. 19, 22 (Bankr.D.Or.1980) (concluding that gross negligence is not the equivalent to a finding of "willful and malicious" conduct). *See also* H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6320–21 ("To the extent that *Tinker v. Coldwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1902), held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a 'reckless disregard' standard, they are overruled.")

## B. *Sanctions*

▮ Okoye states in his opening brief that Kelly's arguments "are for the most part, entirely specious, the reasoning strained, the methods questionable, ... it seems to the undersigned that this is an appropriate case for the imposition of ...

sanctions, and the Appellee would so move." We deny his request as being without merit.

### 1. *Okoye's Mischaracterization of The Record*

Bankruptcy Rule 8010(a)(2) states that "the brief of the appellee shall conform to the requirements of paragraph (1)(A)–(E) of this subdivision, except that a statement of the basis of appellate jurisdiction, of the issues, or of the case need not be made unless the appellee is dissatisfied with the statement of the appellant." Fed.R.Bankr.P. 8010(a)(2).

Bankruptcy Rule 8010(a)(1)(D) provides in turn, that "[t]here shall follow a statement of the facts relevant to the issues presented for review, with *appropriate references to the record.*" Fed.R.Bankr.P. 8010(a)(1)(D) (emphasis added).

A thorough review of Okoye's brief indicates that he failed to cite to the record to support any of his factual contentions. In fact, the only time he cited the record was in his legal argument, when he made reference to Kelly's declaration in opposition to Okoye's motion for summary judgment as well as the state court judgment, which he misquoted.

### 2. *Mischaracterization of State Court Judgment*

Kelly asserts that Okoye and his attorney, William A. Kent ("Kent") failed to accurately quote portions of the state court judgment by altering the text or emphasizing the text without properly informing the court of the changes. We agree. Okoye and Kent failed to accurately quote the state court judgment and in one case misquoted the state court's finding completely. We note the following mischaracterizations of the record by Okoye and Kent in their brief:

> Okoye's Brief: "Finding No. 55. Mr. Kelly in this case turned over all the materials he received from opposing counsel, Steve Drapkin, to Mr. Abbott, HAVING CAUSE TO KNOW that Mr. Abbott

---

**5.** Kelly asserts that the bankruptcy court erred by not considering whether the finding of willful and malicious injury was essential to the state court judgment. There is no need to discuss this issue because the state court never made a finding of willful or malicious conduct. In any case,

to the extent the court made findings of intent, that determination is clearly not necessary to the state court judgment. *See Jackson v. Johnson*, 5 Cal.App. 4th 1350, 7 Cal.Rptr.2d 482, 484–85 (1992) (stating required elements for legal malpractice under California law).

was not going to take further action and had not been taking appropriate action. MR. KELLY KNEW OR SHOULD HAVE KNOWN that the failure to produce the requests for production of documents, ALL WOULD INEVITABLY LEAD TO SANCTIONS AND THE DISMISSAL OF THE CASE."

Actual State Court Judgment: 55. Mr. Kelly in this case, turned over all the materials he received from opposing counsel, Steve Drapkin, to Mr. Abbott, having cause to know that Mr. Abbott was not going to take further action and had not been taking appropriate action. Mr. Kelly knew or should have known that the failure to file a second amended complaint, the failure to produce the plaintiff for deposition, the failure to respond to requests for production of documents, all would inevitably lead to sanctions and the dismissal of the case.

Okoye's Brief: "56. Mr. Kelly cannot unilaterally define the scope of his duties which has already been defined by the substantive law of this state."

Actual State Court Judgment: 56. Mr. Kelly had a duty to prevent this and to exercise reasonable care and skill in the performance of his duties. Mr. Kelly cannot unilaterally define the scope of his duties which has already been defined by the substantive law of this state.

Okoye's Brief: "Finding No. 69. This court has not been able to find any possible excuse for the conduct of the defendants in failing to take the necessary actions required in the handling of these lawsuits after the filing of the initial complaint. Their complete indifference *WITH FULL KNOWLEDGE OF THE CONSEQUENCES OF SUCH FAILURE* is inexcusable."

Actual State court Judgment: 69. The Court has not been able to find any possible excuse for the conduct of the defendants in failing to take the necessary actions required in the handling of these lawsuits after the filing of the initial complaint. Their complete indiffer-

ence with full knowledge of the consequences of such failure is inexcusable.

Okoye's Brief: In Finding No. 40, the Superior Court said that debtor KELLY "aided and abetted in its violation [Business and Professions Code, Section 6126(a), making it a crime to aid and abet someone in holding himself or practicing law who is not an active member of the State Bar.]"

Actual State Court Judgment: 40. Mr. Kelly was advised shortly after the complaint was filed that Mr. Abbott was not going to make any application for pro hac vice approval and he was aware that no such application was ever made. None of this information, however, was imparted to the plaintiff/client, Chris Okoye.

Okoye's Brief: In "Finding No. 29. The conduct on the part of the defendants in the handling of this case amounted to gross negligence [legal malpractice] [and were] BASED UPON DELIBERATE and affirmative acts."

Actual State Court Judgment: 29. The conduct on the part of the defendants in the handling of this case amounted to gross negligence based upon deliberate and affirmative acts.

It is troubling to note that Okoye's brief as drafted by Kent seems to properly use ellipses to designate the omission of words from the state court judgment in some quotes and forgets the designation altogether in others. It is also troubling that certain emphasis was added to the state court judgment without making reference to such additions in the brief.

It is clear that Kent's significant mischaracterization and misrepresentation of and failure to cite to the record is totally improper. Kent should have carefully reviewed his brief for accuracy prior to filing it with the court. The mistakes in his brief as well as the failure to cite to the record were not minor. Although it is within our discretion to impose monetary sanctions, we think it is sufficient in this instance to merely admonish Okoye and Kent for their questionable conduct. As such, we hold Kent and Okoye jointly responsible. *See In re Becraft,* 885

F.2d 547, 550 (9th Cir.1989) (sanctioning attorney under Fed.R.App.P. 38 for breaching professional responsibility to court); *Mitchel v. General Elec. Co.*, 689 F.2d 877, 879 (9th Cir.1982) (sanctioning attorney for failure to cite to the record in support of factual allegations).

## V. CONCLUSION

Because the state court failed to find that Kelly had committed acts which would constitute willful and malicious conduct, the issues sought to be precluded are not the same. As such, collateral estoppel cannot apply. The order granting summary judgment in favor of Okoye must be reversed and a trial should be conducted on the issue of determining the dischargeability of the state court judgment. Accordingly, we REVERSE and REMAND.

The reason for our dealing with the subject of the mischaracterization of the record is the great dependence of appellate courts and the parties on the record. Commentary on and characterization of the record should be presented separately from the record. Representations of the record and briefs should be presented with unqualified accuracy. Without such scrupulous observance appellate courts would be faced with the formidable problem of checking on the accuracy of references to the record in the parties' briefs.