In re YELLOW CAB COMPANY, a Nevada corporation, and its affiliated companies, Debtors.

Bankruptcy Nos. 76–3054/66–P1, 77–01151–P.

United States Bankruptcy Court, S.D. California.

Aug. 28, 1997.

L. Scott Keehn, Robbins & Keehn, APC, San Diego, CA, Richard A. Shaw, Shaw & O'Brien, LLP, San Diego, CA, for Successor Receiver.

Joel C. Estes, Kevin J. Hoyt, Estes & Hoyt, APC, San Diego, CA, for Robert N. Mateer.

Office of U.S. Trustee, Southern Dist. Cal., San Diego, CA.

## MEMORANDUM DECISION

LOUISE DeCARL ADLER*, Chief Judge.

The present conflict arises in connection with the final fee application of Estes & Hoyt ("E & H"). E & H served as general counsel for the original receiver in this hoary chapter XI case. All of the fees covered by this application were incurred after the original receiver was replaced amid allegations of misconduct. Certain of the fees were generated in defending the original receiver against the allegations and actions of his court-appointed successor. E & H relies on this Court's decision in *In re HCS*, 59 B.R. 307 (Bankr.S.D.Cal.1986), for the proposition that the original receiver is entitled to have his defense paid for by the estate. The successor receiver argues that *HCS* is inapplicable to the facts of this case and that E & H is precluded from raising the issue, because the Court denied the original receiver's earlier application to employ defense counsel.

The Court determines that E & H is not precluded from raising the issue, but that the holding in *HCS* is inapplicable to the facts of this case.

## I. FACTUAL SUMMARY

The original bankruptcy petition was filed in December 1976. Soon thereafter the Court appointed Robert Mateer ("Mateer") as receiver to serve as the representative of the bankruptcy estate. In February 1977, he retained Joel Estes to assist him.[1]

By 1984, when this Court "inherited" this case from a prior judge, Mateer's personal involvement with the case had ceased. On December 11, 1983, Mateer filed his final application for compensation and in January 1984, he relocated to the east coast. Although he remained in title as the receiver in this case, his involvement virtually ceased after his departure from the San Diego area.

Mateer continued to employ Martin Goldberg ("Goldberg") as his controller although he provided no meaningful supervision or management over him.[2]

Without the supervision of the receiver, nothing occurred to bring closure to this case: the estate's considerable funds were left to languish in non-interest bearing accounts; no tax returns were filed for the parent or affiliated entities; and inadequate financial records were maintained to prepare such returns.

In March 1987, out of apparent frustration over the glacial pace of administration, various creditors moved for an order directing Mateer to complete his administrative duties, file an accounting and distribute funds. E & H, representing Mateer, opposed the requested relief. In April 1987, the Court ordered that Mateer file an accounting by May 21, 1987. In June 1987, Mateer having failed to file an accounting, the same creditors filed a motion to remove him, deny compensation, impose sanctions and award attorneys' fees. Once again, E & H opposed that relief. On April 1, 1988, the Court entered an order on stipulation which provided for Mateer to resign as receiver and appointed Richard Shaw ("Shaw") as his successor.

During the course of his administration, Shaw identified conduct by Mateer which he believed supported an action for negligent conduct damaging the estate. Realizing that such an action would incur additional administrative expenses and further delay, Shaw, filed a petition for instructions. On November 21, 1991, this Court held a hearing on Shaw's request for instructions and directed him to continue his investigation concerning the factual basis for a surcharge action against Mateer. Pursuant to these instructions Shaw initiated examinations under Rule of Bankruptcy Procedure 205.[3]

---

* Formerly known as Louise DeCarl Malugen.

1. Mr. Estes is now a principal of the firm of Estes & Hoyt.

2. The successor receiver contended that this lack of supervision allowed Goldberg to make an unapproved payment to himself of more than $56,000.00 from the assets of the estate. In May

1992, the Court ordered disgorgement of those fees.

3. This case, having been filed in 1976, is governed under the Bankruptcy Act of 1938 and the corresponding Bankruptcy Rules of Procedure which were adopted in 1973. The age of the case, notwithstanding, the Court will not attempt to use the vernacular of the Act. For example

In February 1992, Mateer filed an application requesting that this Court authorize the employment by the estate of attorney William J. Sulm ("Sulm") to defend Mateer in the actions commenced by the successor receiver. Shaw opposed the application. On April 17, 1992, this Court entered an order approving the substitution of Sulm for E & H as counsel of record for Mateer; however, on April 29, 1992, the Court entered an order denying Mateer's application to have Sulm employed by the estate. Mateer appealed the order but later dismissed his appeal.

E & H has applied for and been awarded and paid fees for services up through June 1989. E & H's present application, the original version of which was filed and withdrawn in May 1992, covers the period from July 1989 (15 months after the appointment of the successor receiver), through May 28, 1992.[4] Shaw opposes any award to E & H on two grounds. First, Shaw contends that E & H's application is an attempt to circumvent this Court's order denying Mateer's request for representation at the expense of the estate. Second, Shaw contends that E & H cannot demonstrate that its employment was "in the best interest of the estate"[5] nor that the services for which it seeks payment benefitted the estate.

At the middle of the present debate hangs this Court's 11–year–old decision in *In re HCS*, 59 B.R. 307 (Bankr.S.D.Cal.1986), which is being batted to and fro like a tether ball—the case was argued in connection with the application to employ Sulm and is cited now by both parties with respect to whether E & H's services benefitted the estate as a matter of law. Although a determination of whether *HCS* applies to the facts of the present case will not resolve all of the issues related to E & H's final fee application, it will refine the scope of the Court's holding in that case and provide guidance to the parties so that they can address the remaining issues from a clear starting point.

## II. ISSUES

The overriding issues before the Court are whether the Court's prior holding in *HCS* applies to E & H's fee application and whether that determination has already been made. Specifically the issues advanced by the parties are:

1. Whether E & H's fee application is barred by principles of *collateral estoppel* or *res judicata.*

2. Whether the services rendered by E & H to Mateer after his removal as receiver benefitted the estate as a matter of law pursuant to the holding in *HCS.*

## III. DISCUSSION

### 1. *Collateral Estoppel and Res Judicata.*

█ In February 1992, Mateer filed his application seeking to have attorney Sulm employed by the estate to defend him in connection with the investigation and threatened lawsuit by the successor receiver under Rule 215 of the Bankruptcy Act. One of the arguments advanced by Mateer at the time, and refuted by Shaw, was that this Court's holding in *HCS* established as a matter of law that Mateer was entitled to have his defense paid for by the estate. On April 22, 1992, the Court entered a simple order, without findings of fact or statements of law, denying the application. Shaw argues that because of the principles of *collateral estoppel* and/or *res judicata*, the order denying Sulm's employment operates to preclude E & H from applying for fees incurred performing services which Sulm presumably would have performed.

Yellow Cab Company will not be referred to as the "bankrupt."

4. The application also includes $958.79 in fees incurred in 1997, which, according to E & H, was incurred revising the fee application to conform to the intervening guidelines of the United States Trustee.

5. Under the Bankruptcy Act, Bankruptcy Rule 215 governed the employment of attorneys and accountants by or on behalf of the estate. Pursuant to that rule, employment was required to be "in the best interest of the estate." Since E & H had already been employed and such employment order was final, this standard is not applicable. Rule 219 governed the compensation of professionals and requires the court to consider the value the services rendered.

█ *Collateral estoppel,* or issue preclusion, bars the relitigation of issues actually adjudicated in previous litigation between the same parties. *Clark v. Bear Stearns & Co., Inc.,* 966 F.2d 1318, 1320 (9th Cir.1992). An issue decided is given *collateral estoppel* effect if the following five elements are met:

(1) The issue sought to be precluded from relitigation is identical to that decided in a former proceeding;

(2) The issue was actually litigated in the former proceeding;

(3) It was necessarily decided in the former proceeding;

(4) The decision in the former proceeding is final and on the merits; and,

(5) The party against whom preclusion is sought is the same as, or in privity with, the party to the former proceeding. *In re Kelly,* 182 B.R. 255, 258 (9th Cir. BAP 1995).[6] The party seeking to assert *collateral estoppel* has the burden of proving all the requisites for its application. *Id.* In this case the successor receiver has failed to establish that the third element is met.

Mateer's application to employ new counsel was under Rule 215 of Rules of Bankruptcy Procedure. Rule 215 required that the employment be "in the best interest of the estate." Under Rule 215 counsel could only be employed if such employment was reasonably necessary for the welfare of the estate. *In re Union Dredging Co.,* 225 Fed. 188, 194 (D.C.Del.1915). Had the Court found that the employment of Sulm was not in the best interest of the estate for any reason—a likely finding in light of the fact that Mateer already had counsel—the Court could have denied the application whether or not *HCS* was applicable. Thus, the issue of whether *HCS* applied under these facts was not necessarily decided. *Collateral estoppel* will not be applied to preclude E & H from applying for the fees incurred in defending Mateer.

█ *Res Judicata* is a doctrine that prevents repetitive litigation of a claim that has previously been tried and decided. Generally, four elements must be present:

(1) The parties were identical in the two actions;

(2) The prior judgment was rendered by a court of competent jurisdiction;

(3) There was a final judgment on the merits; and,

(4) The same cause of action was involved in both cases.

*In re Watson,* 192 B.R. 739, 750 (9th Cir. BAP 1996), citing *Clark v. Bear Stearns & Co., Inc.,* 966 F.2d 1318, 1320 (9th Cir.1992).

█ As to the first element E & H was not a party to the application; that application was brought by Mateer and Sulm. Under certain circumstances, a judgment may bar a subsequent action by a person who was not a party to the original litigation, however, there must be sufficient identity between the parties, i.e., the parties must be in privity. *Eubanks v. F.D.I.C.,* 977 F.2d 166, 170 (5th Cir.1992). A non-party is in privity with a party in the prior suit where their interests were so closely aligned that the non-party was "virtually represented" in the original action. *Id.* This requires more than a showing of parallel interests—it is not enough that the non-party may be interested in the same questions or proving the same facts. *Id.*

Here, the interests at stake were not sufficiently closely aligned. In the prior action Mateer applied to have Sulm employed by the estate. There is no indication that Sulm had done any work at that time. The relief sought was prospective; Sulm had no outstanding fees. Neither Sulm nor Mateer had the motivation that E & H currently has as it seeks payment of fees already incurred. Furthermore the order denying the application was not entered until after E & H was replaced as counsel of record. It would not be equitable to bind E & H to the decision regarding employment of Sulm. *Res judicata* will not be applied to bar E & H from making the current application.

---

**6.** The court in *Kelly* addressed the *collateral estoppel* impact of a California state court judgment in a subsequent bankruptcy case, however, the elements are the same when applied to issues decided in the federal courts such as a prior order of this Court. *Kelly,* 182 B.R. at 258 n. 3.

## 2. Benefit to the Estate/Applicability of HCS.

 E & H applies for allowance of its fees under Rule 219 of the Bankruptcy Act which provides in part that "in making allowances [under this Rule] the court shall give due consideration to the nature, extent, and value of the services rendered as well as the conservation of the estate and the interests of creditors." The parties agree, and this Court holds, that a displaced representative of the estate, like a debtor-in-possession replaced by a trustee, is only entitled to have his or her attorneys' fees paid by the estate where the attorneys' services conferred an actual benefit on the estate. See, *e.g.*, *In re Xebec*, 147 B.R. 518, 523 (9th Cir. BAP 1992) (counsel for debtor-out-of-possession must show that services rendered benefitted the estate.)

E & H relies heavily on this Court's decision in *HCS* for the proposition that Mateer is entitled to have the attorneys' fees generated in defending him from the actions of the successor receiver paid for by the estate because such services are *per se* beneficial to the estate. The Court disagrees.

In *HCS* the standing chapter 7 trustee was named as the defendant in an adversary proceeding brought by a creditor seeking to surcharge the trustee for negligence. The surcharge action was settled with no specific findings of malfeasance and the action was dismissed. Counsel for the trustee applied for compensation for the fees incurred defending the trustee in the action. This Court, holding that the fees were properly paid by the estate, reasoned as follows:

Bankruptcy Code § 323(b) expressly recognizes that a trustee may be sued. The trustee may or may not prevail. If the trustee is determined to be negligent in the administration of the estate, the trustee is personally liable. *In re Cochise College Park, Inc.*, 703 F.2d 1339 (9th Cir. 1983). Obviously, if the trustee is determined to have properly exercised his judgment, no liability results. The difficulty with adopting [the creditor/plaintiff's] position is that even where a trustee properly exercises his business judgment, but is nonetheless sued, the trustee's defense could not be funded by the estate. By definition, where the trustee is a defendant, settlement of the action will not result in the recovery of assets, which will increase amounts paid to unsecured creditors.

. . . . .

Trustees are an integral part of the successful operation of the bankruptcy laws. If this Court required the trustee to pay for his or her own representation, given the relatively modest compensation the Code provides for trustees, the practical effect would be that few trustees would be willing to serve. This is especially true regarding non-attorney trustees. The Ninth Circuit has expressly recognized the concern that absent provisions for adequate compensation of bankruptcy professionals, highly qualified professionals would abandon bankruptcy work in favor of more remunerative kinds of work. *In re Nucorp Energy, Inc.*, 764 F.2d 655, 658 (9th Cir.1985).

*HCS*, 59 B.R. at 309–10.

 Today, eleven years later, the Court remains convinced that the decision in *HCS* was correct: A representative of the bankruptcy estate in otherwise good standing is entitled to defend him or herself from allegations of malfeasance by a creditor, and, unless malfeasance is established, the estate shall bear the reasonable costs of such defense. The present case, though, is distinguishable and demands a different result.

 First, the trustee in HCS remained throughout the court-appointed representative of the estate. In the case at hand Mateer had voluntarily stepped down under allegations of improper actions, before the successor receiver began the official actions against him[7]. Second, Mateer was not sued by a disgruntled creditor, but rather by his court-appointed successor. In this case there is a level of Court participation and review of the decision to sue which was not

---

[7]. The Court finds that the successor receiver officially began taking actions against Mateer on October 24, 1991, when he revealed his suspicions to the Court in the request for instructions.

present in *HCS*. The Court appointed the successor receiver after considering his expertise and qualifications in the bankruptcy tax field.[8] The successor receiver was neutral, charged with representing the best interests of the estate as a whole. Further, the Court had to approve any fees to be paid him and his counsel. Thus, in addition to his obligation to perform only those services reasonably calculated to benefit the estate, the successor receiver, like any court-appointed representative of the estate, risked nonpayment of fees if he went too far afield. A creditor contemplating a lawsuit is not subject to the same constraints.

 In *HCS* the trustee was properly entitled to defend his actions as trustee against a creditor at the expense of the estate so long as he was not shown to have been negligent. Here, the opposite holding is warranted. Where, as in the present case, actions are taken against a representative who stepped down amid allegations of wrongdoing by a court-appointed representative of the estate, the displaced representative must bear the cost of his defense, unless otherwise ordered by the court.

This approach provides an equitable balance which recognizes the need to encourage qualified professionals to serve as representatives of the estate and yet safeguards the right of creditors to get a reasonable return on their claims. A creditor should not be forced to watch his or her potential recovery dwindle as the estate funds both sides of a surcharge action. The holding in *HCS* does not support E & H's assertion that its services in defending Mateer benefitted the estate *per se*.

## IV. CONCLUSION

For the reasons set forth above the Court holds that E & H was not precluded from relying on *HCS*, but that such reliance is of no avail as the facts of the present case are distinguishable.

Because the parties primarily focused their arguments on the applicability of *HCS*, the Court finds they have not fully addressed

whether any of E & H's services benefitted the estate. E & H contended in argument that its cooperation with Shaw resulted in savings to the estate. If it is able to establish such a benefit, the firm would be entitled to reimbursement. E & H is authorized to file supplementary papers identifying those services which conferred an actual benefit to the estate within twenty (20) days of the entry of this Memorandum Decision. Shaw shall file any response within fifteen (15) days of such service. E & H may file a reply within five (5) days of service of such opposition. The parties may calendar the matter for additional oral argument on the new pleadings on ten (10) days' notice.

---

8. As this case preceded the implementation of the U.S. Trustee program with respect to cases pending in this district, the Court selected and appointed Mr. Shaw.