NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   CC-11-1065-HPaMk |
| MANMOHAN SINGH BIRING, | Bk. No.   07-21006 |
| Debtor. | Adv. No. 08-01172 |
| MANMOHAN SINGH BIRING, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| YOGESH DHAWAN, | |
| Appellee. | |

Argued and Submitted on November 16, 2011,
at Pasadena, California

Filed - January 12, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Peter H. Carroll, Bankruptcy Judge, Presiding

Appearances:   Gregory M. Salvato, Esq. of Salvato Law Offices
argued for the Appellant.  Bren Conner, Esq. of
Conner & Associates argued for the Appellee.

Before: HOLLOWELL, PAPPAS and MARKELL, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Creditor Yogesh Dhawan (Dhawan) obtained a default judgment in California state court and subsequently sued the debtor to determine the nondischargeability of the debt pursuant to § 523(a).[2] The bankruptcy court granted Dhawan's motion for summary judgment, determining that there was no genuine issue of material fact because of the preclusive effect of the state court judgment. We AFFIRM.

## I. FACTS

The Debtor is a pulmonary and critical care physician, licensed to practice medicine in California. He has expertise in skin care and other cosmetic treatments. In 2002, the Debtor created Healthwest, Inc. (Healthwest) to offer and sell licenses for "med spa" clinics (Clinics) that provided laser hair removal, Botox, light treatment and microdermabrasion. The Debtor, through Healthwest, sold the licenses with options to operate the Clinics in certain exclusive territories. As part of the purchase, the Debtor would provide necessary support services for the operation of the Clinics.

On August 13, 2003, Healthwest filed an application with the California Department of Corporations (CDOC) to register its sale of licenses and options as franchises. In October or November 2003, the Debtor provided Dhawan with its franchise offering. Based on the information and representations provided by the Debtor in connection with the Clinic opportunity, Dhawan

---

[2] Unless otherwise specified, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

purchased a license to operate a Clinic and entered into a Licensing Servicing Agreement, a Management Support Services Agreement, and an Asset Purchase Agreement with the Debtor and Healthwest.

On July 7, 2004, the CDOC finalized its review of Healthwest and denied its franchise registration application, finding that Healthwest had advertised and sold the Clinics by means of fraudulent misrepresentation. It found that "the offer or sale of [the] franchises in California would constitute misrepresentation, deceit and fraud on the purchasers," for reasons including that the Debtor and Healthwest sold multiple licenses for the same territories.

On September 24, 2004, Dhawan filed a complaint against the Debtor and Healthwest in California state court alleging thirteen causes of action including fraud, fraudulent inducement to contract, negligent misrepresentation, breach of contract, unfair competition and unfair business practices in connection with his purchase of the Clinic (the State Court Complaint). Dhawan alleged that the Debtor, individually and as the sole shareholder and officer of Healthwest, fraudulently induced him to invest in the Clinic and enter into the associated agreements, and then systematically breached those agreements by not delivering what was promised. The State Court Complaint incorporated the findings of the CDOC. Dhawan sought general, special, and punitive damages in an unspecified amount.

Although the Debtor and Healthwest were properly served with the State Court Complaint, neither answered. Default judgments were entered against the Debtor and Healthwest on February 8,

2005. Dhawan submitted evidence and testimony concerning the claims made in the State Court Complaint to support the amount of his resulting damages at a "prove up" hearing held on September 12, 2005. Although the Debtor admits he received both the State Court Complaint and the statement of damages, he did not appear at the prove up hearing.

On September 12, 2005, the state court entered a $1,924,008.64 judgment jointly and severally against the Debtor and Healthwest (the Judgment). The state court awarded damages based on the "oral testimony and other evidence presented by [Dhawan], including [his] written declaration, and supporting exhibits." It found that "consistent with this action and the evidence presented," Dhawan "sustained damages as alleged in the complaint." The Judgment specified the damages:

> 1) $85,000 for Mr. Dhawan's initial payment for the [Clinic] and options pursuant to the License Agreement, which has been rendered useless by the Defendants' misrepresentations and breaches of contract to aid in the operation of the [Clinic];
>
> 2) $225,000 for the lost value of the options on the . . . territories . . . pursuant to both the parties' Option Agreement and Asset Purchase Agreement for which Mr. Dhawan was denied his opportunity to exercise the options due to the breaches and fraudulent conduct as evidenced and identified by the Department of Corporations;
>
> 3) $129,000 in the amount that Mr. Dhawan became obligated, and now remains obligated on the promissory note executed in connection with the Asset Purchase Agreement, but which Defendants breached by failing to provide the assets promised;
>
> 4) $198,990 to purchase the equipment and other assets

that should have been provided by Defendants . . . pursuant to the Asset Purchase Agreement;

5) $245,343.64 in losses and additional expenditures . . . due to Defendants' failure to provide the support, training and marketing efforts that had been promised in both the Licensing Agreement and Marketing Agreement;

6) $510,000 in lost profits . . . ;

7) $510,000 which represents the net income for [the Clinics] that had been optioned as was set forth in the profit and loss statements which were used by the Defendants to induce Mr. Dhawan's reliance;

8) costs in the amount of $675; and,

9) $20,000 in relocation and related expenses for Plaintiff's family.

On November 28, 2007, the Debtor filed a voluntary petition under chapter 7. Dhawan filed an adversary proceeding on February 26, 2008, to have the Judgment declared nondischargeable under § 523(a)(2), (a)(4) and (a)(6) (the Nondischargeability Complaint). Like the State Court Complaint, the Nondischargeability Complaint alleged that the Debtor fraudulently induced him to invest in the Clinic. Dhawan contended that the Debtor knew that the information in the franchise offering was false and never intended to perform on the agreements in connection with the Clinic as promised. He asserted that the offering and sale of the Clinic was part of a scheme to defraud him.

Dhawan filed a motion for summary judgment on the basis that the Judgment had preclusive effect on the issue of whether the Debtor committed fraud under § 523(a)(2)(A). The Debtor filed an

-5-

opposition. After a hearing on December 21, 2010, the bankruptcy court issued a memorandum decision determining that the Debtor had a full and fair opportunity to litigate the State Court Complaint and that because the issue of his fraudulent conduct was necessarily decided in the state court, he was precluded from relitigating Dhawan's fraud claim in bankruptcy. The bankruptcy court entered a judgment on January 19, 2011, declaring the Judgment nondischargeable pursuant to § 523(a)(2). The Debtor timely appealed.

## II.  JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 157(b)(2)(A), (I), (O) and § 1334. We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUE

Did the bankruptcy court err in granting summary judgment excepting from discharge the $1,924,008 in damages awarded by the state court?

## IV.  STANDARDS OF REVIEW

We review de novo the bankruptcy court's grant of summary judgment. Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1221-22 (9th Cir. 2010); Cutter v. Seror (In re Cutter), 398 B.R. 6, 16 (9th Cir. BAP 2008).

We review de novo a bankruptcy court's determination that issue preclusion is available. Lopez v. Emerg. Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 103 (9th Cir. BAP 2007); Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 823 (9th Cir. BAP 2006). Once we determine that issue preclusion is available, we review whether applying it was an abuse of

-6-

discretion. In re Lopez, 367 B.R. at 103; In re Khaligh, 338 B.R. at 823; Miller v. County of Santa Cruz, 39 F.3d 1030, 1032 (9th Cir. 1994). A bankruptcy court abuses its discretion when it applies the incorrect legal rule or its application of the correct legal rule is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." United States v. Loew, 593 F.3d 1136, 1139 (9th Cir. 2010) (quoting United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009)(en banc))(internal quotation marks omitted).

## V. DISCUSSION

### A. Summary Judgment

In reviewing the bankruptcy court's decision on a motion for summary judgment, we apply the same standards as the bankruptcy court. Summary judgment may be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (incorporated by Rule 7056); Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 707 (9th Cir. 2008).

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A dispute is genuine if there is sufficient evidence for a reasonable fact-finder to hold in favor of the non-moving party, and a fact is "material" if it might affect the outcome of the case. Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 992 (9th Cir. 2001) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986)).

Once the moving party has met its initial burden, the non-moving party must show specific facts establishing the existence of genuine issues of fact for trial. Id., at 256.

**B.    Issue Preclusion**

Issue preclusion applies in nondischargeability proceedings to bar the relitigation of factual issues that were determined in a prior state court action. Grogan v. Garner, 498 U.S. 279, 284-85 n.11 (1991).  To determine the issue-preclusive effect of a California state court's judgment, we apply California preclusion law.  28 U.S.C. § 1738; Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985); Gayden v. Nourbakhsh (In re Nourbakhsh), 67 F.3d 798, 800 (9th Cir. 1995).  Under California law, the party asserting issue preclusion has the burden of establishing the following "threshold" requirements:

(1) the issue sought to be precluded must be identical to that decided in a former proceeding;

(2) the issue must have been actually litigated in the former proceeding;

(3) it must have been necessarily decided in the former proceeding;

(4) the decision in the former proceeding must be final and on the merits; and,

(5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001); In re Lopez, 367 B.R. at 104.

Additionally, the application of issue preclusion requires a "mandatory 'additional' inquiry into whether imposition of issue preclusion would be fair and consistent with sound public

-8-

policy." In re Khaligh, 338 B.R. at 824-25. As stated by the California Supreme Court:

> We have repeatedly looked to the public policies underlying the doctrine before concluding that collateral estoppel should be applied in a particular setting. . . . Accordingly, the public policies underlying collateral estoppel - preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation - strongly influence whether its application in a particular circumstance would be fair to the parties and constitutes sound judicial policy.

Lucido v. Super. Ct., 51 Cal.3d 335, 342-43 (1990)(internal citations omitted); see also In re Lopez, 367 B.R. at 108.

To meet its burden, the moving party must have pinpointed the exact issues litigated in the prior action and introduced a record revealing the controlling facts. Kelly v. Okoye (In re Kelly), 182 B.R. 255, 258 (9th Cir. BAP 1995), aff'd, 100 F.3d 110 (9th Cir. 1996). Reasonable doubts about what was decided in the prior action are resolved against the party seeking preclusion. Id.

**C.    Section 523(a)(2)(A)**

The Bankruptcy Code excepts from discharge any debt for money, property, services, or credit obtained by false pretenses, a false representation, or actual fraud. 11 U.S.C. § 523(a)(2)(A). To prevail on a claim under § 523(a)(2)(A), a creditor must demonstrate five elements: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of the debtor's statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance

on the debtor's statement or conduct. <u>Candland v. Ins. Co. of N. Am. (In re Candland)</u>, 90 F.3d at 1466, 1469 (9th Cir. 1996); <u>Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)</u>, 234 F.3d 1081, 1085 (9th Cir. 2000). The elements of § 523(a)(2)(A) mirror common law fraud. <u>Field v. Mans</u>, 516 U.S. 59, 61 (1995). The creditor bears the burden of proving each element of § 523(a)(2)(A) by a preponderance of the evidence. <u>Grogan v. Garner</u>, 498 U.S. at 287.

**D. Application of Issue Preclusion**

The Debtor argues that issue preclusion should not apply in this case because the issue of fraud, including the element of intent to deceive, was not actually litigated or necessarily decided in the state court since it was the result of a default.

However, while in the minority, California law accords preclusive effect to default judgments, "at least where the judgment contains an express finding on the allegations." <u>Gottlieb v. Kest</u>, 141 Cal.App.4th 110, 149 (Cal. Ct. App. 2006); <u>Green v. Kennedy (In re Green)</u>, 198 B.R. 564, 566 (9th Cir. BAP 1996). The rationale behind finding that default judgments can be preclusive is that defendants who are served with a summons and complaint but fail to respond are presumed to admit all the facts pled in the complaint. <u>In re Harmon</u>, 250 F.3d at 1247. Therefore, a default judgment:

> conclusively establishes, between the parties so far as subsequent proceedings on a different cause of action are concerned, the truth of all material allegations contained in the complaint in the first action, and every fact necessary to uphold the default judgment . . . .

-10-

_Gottlieb v. Kest_, 141 Cal.App.4th at 149 (internal citations omitted).

For a default judgment to be "actually litigated," the material factual issues must have been both raised in the pleadings and necessary to uphold the default judgment. _Id._ Therefore, the record in the prior proceeding must show an express finding upon the allegation for which preclusion is sought. However, "the express finding requirement can be waived if the court in the prior proceeding necessarily decided the issue." _Cantrell v. Cal-Micro, Inc. (In re Cantrell)_, 329 F.3d 1119, 1124 (9th Cir. 2003). "In such circumstances, an express finding is not required because if an issue was necessarily decided in a prior proceeding, it was actually litigated." _Id._ (internal citations omitted).

There is no dispute here that the Debtor received notice of the State Court Complaint, as well as the default judgment and Dhawan's filed statement of damages and notice of the "prove up" hearing. Nevertheless, the Debtor asserts that the issue of fraud was not actually litigated because the Judgment did not contain express findings of fraud. He contends that the issue of fraud was not necessarily decided because the damages that were awarded could have been based on Dhawan's claims for negligent misrepresentation or breach of contract rather than fraud.

The Debtor relies on _In re Harmon_ to support his position. 250 F.3d 1240. In that case, the plaintiff sued the debtor for conversion, contract violations and damages for restitution and dissolution of partnership in connection with a failed joint venture in an Ostrich ranch. After the state court judgment

-11-

became final, the plaintiff sought to have it declared nondischargeable under § 523(a)(2)(A). The Ninth Circuit held that the state court did not provide express findings of fraud (or anything else) in the judgment and because fraud could not be interpreted from the basis of the complaint, the issue of fraud had not been actually litigated.

Here, however, the State Court Complaint, like the Nondischargeability Complaint, alleged fraud in connection with the offer and sale of the Clinics. While the Debtor asserts that the State Court Complaint alleged many causes of action that were non-fraud related, the causes of action were, in fact, all related to the Debtor's alleged fraud in the offer and sale of the Clinic franchises. The State Court Complaint alleged facts supporting Dhawan's claims that the Debtor falsely represented to Dhawan the profits available from the Clinic, the exclusiveness of operations, and the support available from the Debtor. Dhawan alleged that the Debtor fraudulently induced him to enter the Licensing Servicing Agreement and the Asset Purchase Agreement. He alleged that he relied on the Debtor's misrepresentations in purchasing the Clinic and entering into the agreements as part of the transaction. Finally, Dhawan alleged that the Debtor breached those agreements by intentionally failing to perform as promised.

In entering the Judgment, the state court expressly found that Dhawan presented evidence consistent with the allegations in the State Court Complaint and awarded Dhawan the damages sustained as a result. Additionally, the Judgment referenced the CDOC findings that the Debtor had engaged in fraudulent conduct

-12-

with respect to the offer and sale of the Clinics and in selling exclusive operating territories under its agreements.

Thus, the Debtor's fraud underlies all of the state court claims. Simply because the Judgment did not expressly identify that each component of the $1,924,008 award was based on the fraudulent conduct of the Debtor, it does not mean that there was a "reasonable doubt as to what was decided." See In re Kelly, 182 B.R. at 258. The Judgment cannot be sustained, as the Debtor argues, on solely the non-fraud breach of contract claims because the agreements themselves were found to be the result of the Debtor's fraudulent conduct.[3]

Because the factual issues supporting fraud were raised in the State Court Complaint and necessary to the Judgment, the State Court Complaint was "actually litigated" and necessarily decided. Id.; see Younie v. Gonya (In re Younie), 211 B.R. 367, 374-75 (9th Cir. BAP 1997). There is no question that the parties to the bankruptcy action are the same as those that participated in the state court. The State Court Complaint and the Nondischargeability Complaint alleged the same set of facts and circumstances, and the Judgment was a final decision on the merits. Thus, the threshold requirements for the application of issue preclusion are satisfied. The bankruptcy court did not err

---

[3] The bankruptcy court relied on the state court's oral ruling that Dhawan was entitled to an award of punitive damages, although punitive damages were ultimately not reduced to judgment, as a basis for determining that the issue of fraud was necessarily decided. In this case, regardless of the punitive damage award, the evidence in the record is sufficient to demonstrate that the issue of fraud was necessary to uphold the Judgment.

-13-

in concluding that the issue of whether the Debtor committed fraud within the meaning of § 523(a)(2)(A) was precluded by the Judgment and could not be relitigated in the bankruptcy court. We perceive no abuse of discretion in the bankruptcy court's decision to apply issue preclusion in this case.

Because of the preclusive effect of the Judgment, Dhawan satisfied his burden of demonstrating that there were no genuine issues of material fact as to the elements of fraud. As a result, the bankruptcy court did not err in granting Dhawan summary judgment on his Nondischargeability Complaint.

## VI. CONCLUSION

The bankruptcy court did not err in giving preclusive effect to the Judgment. For that reason, we AFFIRM the bankruptcy court's grant of summary judgment to Dhawan.

-14-